# EXHIBIT A

# IN THE SUPREME COURT OF ILLINOIS

|  |  |  |
|---|---|---|
| ██████, a minor, by RHEALYN ALEXANDER, individually as parent and next friend of ██████ | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. |
| v. | ) ) | |
| ABBOTT LABORATORIES, INC., | ) ) | |
| Defendant. | ) ) | |

JAN 8 2012

VONAND LLP

## MOTION TO CONSOLIDATE AND TRANSFER PURSUANT TO SUPREME COURT RULE 384

Pursuant to Supreme Court Rule 384, Plaintiffs, ██████, a minor, by Rhealyn Alexander, the minor's parent and next friend, respectfully move to transfer the nine pending Depakote® and Depakote® ER ("Depakote") products liability cases, as well as future Depakote cases, to the Circuit Court of St. Clair County for consolidated proceedings.

As explained more fully in the attached Memorandum in Support of Motion to Consolidate and Transfer Pursuant to Supreme Court Rule 384, a consolidation of these actions in the Twentieth Judicial Circuit Court is warranted, as follows:

1. The nine lawsuits identified in the attached Appendix of Actions ("Depakote Cases") are pending in St. Clair County (five cases), adjacent Madison County (one cases), and Cook County (three cases). Plaintiffs brought each of these suits against Defendant, Abbott Laboratories, Inc. ("Abbott"), for injuries resulting from Abbott's prescription drug Depakote. The Depakote Cases present common questions of fact concerning Abbott's development, testing,

manufacturing, and marketing of Depakote, as well as the common questions of law regarding Abbott's liability for same.

2. Consolidation will eliminate duplicative discovery and pretrial litigation, prevent inconsistent pretrial and trial rulings, and thereby promote judicial efficiency. Further, consolidation will serve the serve the convenience of the parties and witnesses by allowing the parties to coordinate document discovery and a single set of depositions of the key witnesses.

3. The Circuit Court of St. Clair County is the most appropriate forum for consolidation. The first-filed of the Depakote Cases was filed there on August 17, 2010. Additionally, the majority of the Depakote Cases are currently pending in St. Clair County before Judge Andrew J. Gleeson; therefore, the Twentieth Judicial Circuit Court is familiar with the cases and their issues, and has already spent considerable time and effort on planning and scheduling discovery and hearing motions. Combined with the Madison County case adjacent to St. Clair County, a full two thirds of the pending Depakote Cases are in or near St. Clair County.

WHEREFORE, Plaintiffs respectfully request the Court to issue an Order transferring all the Depakote Cases listed in the accompanying Appendix of Actions, as well as subsequently filed related actions, to the Circuit Court of St. Clair County for consolidated proceedings against Defendant, Abbott Laboratories, Inc.

Respectfully submitted,

Lloyd M. Cueto, IL 06292629
LAW OFFICE OF LLOYD M. CUETO
7110 West Main Street
Belleville, IL 62223
Phone: (618) 277-1554
Facsimile: (618) 277-0962

Christopher Cueto, #06192248
LAW OFFICE OF CHRISTOPHER CUETO, LTD.
7110 West Main Street
Belleville, IL 62223
Phone: (618) 277-1554
Fax: (618) 277-0962

Robert L. Salim, Bar #11663
ATTORNEY AT LAW
1901 Texas Street
Natchitoches, LA 71457
Phone: (318) 352-5999
Fax: (318) 352-5998

Ralph D. McBride
Douglas A. Daniels
BRACEWELL & GIULIANI LLP
711 Louisiana Street, Suite 2300
Houston, Texas 77002-2781
Phone: (713) 223-2300
Fax: (713) 221-1212

Kenneth T. Fibich
FIBICH HAMPTON LEEBRON
BRIGGS & JOSEPHSON, LLP
1150 Bissonnet
Houston, TX 77005
Phone: (713) 751-0025
Fax: (713) 751-0030

Jeffrey D. Meyer
THE MEYER LAW FIRM, P.C.
510 Bering, Suite 300
Houston, Texas 77057
Phone: (713) 974-4100
Fax: (713) 974-0225

3

William M. Audet
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco, CA 94105
Phone: (415) 568-2555
Fax: (415) 568-2556

John T. Boundas, #06236743
WILLIAMS KHERKHER HART BOUNDAS, LLP
8441 Gulf Freeway, Suite 600
Houston, TX 77017
Phone: (713) 230-2200
Fax: (713) 643-6226

ATTORNEYS FOR PLAINTIFFS

# IN THE SUPREME COURT OF ILLINOIS

� ████████, a minor, by RHEALYN ) 
ALEXANDER, individually as parent and )
next friend of ████████ )
       )
       )
      **Plaintiffs,** )
**v.** )    **Case No.**
       )
**ABBOTT LABORATORIES, INC.,** )
       )
      **Defendant.** )

## MEMORANDUM IN SUPPORT OF MOTION TO CONSOLIDATE AND TRANSFER PURSUANT TO SUPREME COURT RULE 384

Pursuant to Supreme Court Rule 384, Plaintiffs, ████████ a minor, by Rhealyn

Alexander, individually and as the minor's parent and next friend, respectfully move to transfer

the nine pending Depakote®[1] ("Depakote") products liability lawsuits identified in the attached

Appendix of Actions ("Depakote Cases"), as well as future Depakote cases, to the Circuit Court

of St. Clair County for consolidated proceedings against Defendant, Abbott Laboratories, Inc.

("Abbott").

The nine Depakote Cases are pending in St. Clair County (five cases), adjacent Madison

County (one case), and Cook County (three cases), and are appropriate for transfer and

consolidation under Rule 384 because they present substantial common factual and legal issues

and consolidation will promote judicial efficiency and serve the convenience of the parties and

---

[1] Other names for Depakote-related products are Depakene, Depakote ER, Depacon, Depakote tablets, Depakote capsules, Depakote sprinkle, and/or any valproate, valproic acid, divalproex sodium, Epival and/or Epilim.

A5

witnesses. (Ex. A, Plaintiffs' Original and Amended Complaints.) Plaintiffs brought each of these suits against the same Defendant: Abbott Laboratories, Inc., an Illinois corporation. All of the Plaintiffs in each of the Depakote Cases, most of whom are still minors, suffer from specific birth defects resulting from *in utero* exposure to Abbott's prescription drug Depakote ingested by their pregnant mothers, and seek redress for their injuries by alleging the same types of claims against Abbott. (Ex. A at 1-183.) The Depakote Cases present common questions of fact concerning Abbott's research, development, testing, manufacturing, marketing, and sale of Depakote, Abbott's awareness of the teratogenic (birth defect) risks associated with the drug, the inadequate warnings Abbott disseminated into the healthcare marketplace about Depakote, as well as the common questions of law regarding Abbott's liability for same. Consolidating these cases for proceedings through trial will prevent duplication and inconsistency in discovery and court rulings, and will allow the parties to coordinate document discovery, depositions, pretrial litigation, and trial.

The Twentieth Judicial Circuit Court of St. Clair County is the most appropriate forum for consolidation because it is the most convenient for the parties and will ensure the just and efficient resolution of the cases. The first four and most advanced Depakote Cases were filed there, and the majority of the Depakote Cases are currently pending in St. Clair County in front of Judge Andrew J. Gleeson. (Ex. A at 1-28, 49-91, 124-135, and 149-183.) Therefore, the Twentieth Judicial Circuit Court is the most familiar with the cases and their issues, and has already spent considerable time and effort planning and scheduling discovery and resolving pretrial disputes. (Ex. B, Motions filed in and Orders issued by the Twentieth Judicial Circuit Court.) All of these factors indicate that the Circuit Court of St. Clair County is the most appropriate choice, as no other circuit court has these advantages as a potential transfer forum.

2

## **BACKGROUND**

Abbott began marketing and placing Depakote into the stream of commerce throughout the United States after it received approval to market Depakote for treatment of certain forms of epilepsy in 1978. Depakote was promoted by Abbott as an effective anti-epileptic drug ("AED"). However, the primary compound in Depakote, valproic acid, has been established to cause severe birth defects if taken during the first trimester of pregnancy. Therefore, Depakote is riskier than other modern AEDs for women who are pregnant or who may become pregnant, especially during the first twenty-eight days of gestation when neural tube closure and other critical mid-line formations are taking place in the cellular structure of the developing embryo. Major congenital anamolies, i.e., birth defects, known to result directly from first-trimester exposure to Depakote are, either singly or in some combination with each other, as follows: spina bifida, cleft palate, cleft lip, limb and digital deformities, facial dysmorphism, mental developmental delays, genitourinary malformations, and heart defects. Abbott was aware of the birth defects associated with Depakote in early-term pregnancies before it began marketing and distributing Depakote in the United States. Despite this knowledge, Abbott steadfastly refused to communicate the true nature and extent of the risk in its product labeling and warnings to physicians and consumers. Further, Abbott has worked aggressively to expand the uses for which the drug is approved and marketed to doctors and patients. Abbott continues to downplay the risks and refuses to provide adequate information in its drug labeling and package inserts regarding the real scope and severity of the dangers to women who are or may become pregnant and their children. All of the Plaintiffs in the nine pending Depakote Cases suffered injuries caused by Depakote and Abbott's actions summarized above. (Ex. A.)

### A.     St. Clair County Cases

The first Depakote Case, ▮▮▮▮ *et al. v. Abbott Laboratories, Inc.*, Case No. 10-L-422, was filed in the Circuit Court for the Twentieth Judicial District, St. Clair County, Illinois, on August 17, 2010. (Ex. A at 149-183.) Although discovery has been stayed since October 7, 2011, while Abbott pursues its appeal of the denial of its venue motion, discovery began in October 2010 and has continued for the ensuing year. (Ex. B at 1-461.) Virtually all of Plaintiffs' discovery efforts in ▮▮▮ seek documents and information that are relevant to all Depakote Cases.

▮▮▮ Plaintiffs' First Set of Requests for Production was propounded on Abbott on October 15, 2010, and sought documents related to Abbott's development and marketing of Depakote, including, but not limited to, all adverse drug reporting, regulatory filings, training materials, safety information, sales data, clinical trials, and label warnings. Plaintiffs' interrogatories to Abbott served on January 21, 2011, requested information regarding any other lawsuits, claims, or arbitrations related to Depakote in which Abbott has been a defendant or respondent, Abbott's document retention policy related to Depakote, and Abbott's systems and procedures for storing electronic documents.

▮▮▮ Plaintiffs' Second Set of Requests for Production to Abbott also served on January 21, 2011, requested documents related to the interaction between Depakote and folate levels, whether Abbott considered instituting a program for Depakote use that would require pregnancy tests and/or birth control, and any effort Abbott made to reduce the teratogenic effects of Depakote. Specifically, the requests seek communications between Abbott and the FDA that mention "folic acid" or "folate levels," and all documents that relate to labeling or warning with respect to folic acid use for women taking Depakote. Plaintiffs' Third Set of Requests for Production to Abbott served May 26, 2011, requested all emails containing certain specified

4

search terms, all of which are relevant to all Depakote Cases, including "birth defect, teratogen, pregnancy, folic acid, fetus, prenatal, neural tube, cleft, defect, and abortion."

██████Plaintiffs' next three sets of requests propounded in May, July, and August of 2011 requested information and documents stored in Abbott's database systems related to Depakote, including market data and reports, promotional and marketing documents, physician information, and sales data, as well as emails Abbott was ordered to produce in response to a subpoena issued by the federal government related to Abbott's off-label marketing of Depakote and the final labeling for Depakote approved for use in any foreign county. All of this information and these documents requested during formal discovery in *Weir* are relevant to all of the Plaintiffs in the nine Depakote Cases.

In May 2011 ██████ Plaintiffs served a deposition notice for the person(s) most knowledgeable to testify on Abbott's behalf about nineteen specific subject matters, including Abbott's database systems, software, electronic messaging systems, storage and back-up systems, Abbott's procedures regarding electronic document preservation, and its use of the internet. The topics covered by the deposition notice are relevant to all Depakote Cases. Abbott resisted presenting any persons for depositions on said topics, forcing the ██████Plaintiffs to file a motion to compel, which was granted. (Ex. B at 127-176.) To date, Abbott has produced four corporate representatives for depositions: Steve Columbus (July 15, 2011), Wayde Baldwin (August 30, 2011), Rich Weber (August 30, 2011), and Timothy Schmitt (August 30, 2011). (Ex. B at 178.)

██████ *et al. v. Abbott Laboratories, Inc.*, Case No. 10-L-651, was filed in the Circuit Court for the Twentieth Judicial District, St. Clair County, Illinois, on December 15, 2010. (Ex. A at 1-28.) Discovery is currently stayed while Abbott pursues its appeal of the denial of its venue motion; however, ██████Plaintiffs previously served interrogatories on Abbott on

5

August 30, 2011. These interrogatories request Abbott to identify, by name, title, and years of employment, each person at any level within Abbott who worked in various departments, including, Pharmacovigilence, Product Safety, Marketing, Sales, Medical Affairs, Business Analytics, Regulatory Affairs, Global Labeling, and Clinical Research, among others. Information responsive to ██████ Plaintiffs' request will be used to identify potential custodians of relevant documents and is relevant to all Plaintiffs in the nine Depakote Cases.

████ *et al. v. Abbott Laboratories, Inc.*, Case No. 11-L-27, was filed in the Circuit Court for the Twentieth Judicial District, St. Clair County, Illinois, on January 18, 2011, and *Brumfield, et al. v. Abbott Laboratories, Inc.,* Case No. 11-L-143, was filed in the Circuit Court for the Twentieth Judicial District, St. Clair County, Illinois, on March 22, 2011. (Ex. A at 49-91.) Discovery is currently stayed in both cases while Abbott pursues its appeal of the denial of its venue motion. The instant case, ████. *Abbott Laboratories, Inc.*, Case No. 11-L-0583, was filed in the Circuit Court for the Twentieth Judicial District, St. Clair County, Illinois, on October 17, 2011. (Ex. A at 124-135.) Although Plaintiffs have not served any discovery in this case, Plaintiffs' first sets of interrogatories and requests for production are drafted and will be propounded shortly. Said discovery requests are drawn from Plaintiffs' various discovery requests already served in ████ and will be relevant to all Plaintiffs in the Depakote Cases.

Each of the five St. Clair County cases discussed above has been assigned to Judge Andrew J. Gleeson. All told, Plaintiffs have filed eleven motions that covered topics and issues relevant to all Depakote Cases: six motions to compel production of requested documents, a motion to compel Abbott to produce a corporate representative for deposition, a motion for entry of a protocol for the preservation and production of electronically stored information (ESI), a motion prohibiting Abbott from *ex parte* contact with Plaintiffs' physicians, a motion for entry of

6

an omnibus discovery order regarding the scope and timetable for Abbott's document production, and a motion for entry of a protective order regarding confidential documents. (Ex. B at 1-461.)

Judge Gleeson has held five hearings that covered issues relevant to all Depakote Cases: a February 8, 2011, hearing regarding Abbott's document production; a June 28, 2011, hearing regarding Plaintiffs' deposition notice, Abbott's document production, and Plaintiffs' proposed ESI protocol; a July 20, 2011, hearing regarding Abbott's document production and Plaintiffs' proposed ESI protocol; a September 21, 2011, hearing regarding Abbott's document production, Abbott's *ex parte* contact with Plaintiffs' physicians, Plaintiffs' proposed ESI protocol, a protective order regarding confidential documents, and Abbott's litigation hold notice; and a September 30, 2011, emergency hearing regarding Abbott's litigation hold notice.

Judge Gleeson has entered nine orders that cover topics and issues relevant to all Depakote Cases: a February 8, 2011, order requiring Abbott to respond to Plaintiffs' First Request for Production; a June 28, 2011, order regarding the timetable for Abbott's document production; a June 28, 2011, order regarding the preservation of electronically stored information and requiring Abbott to produce a corporate representative for deposition; a July 20, 2011, order compelling Abbott to produce its Adverse Event Report ("AER") database; a July 20, 2011, order requiring Abbott to produce expert reports from a prior but substantively identical Depakote lawsuit; a September 21, 2011, agreed protocol for the production of ESI; a September 21, 2011, order prohibiting Abbott's *ex parte* contact with physicians; a September 21, 2011, order compelling Abbott to produce its litigation hold notice for the ████ lawsuit; and an October 3, 2011, protective order regarding confidential documents. (Ex. B at 60, 177, 178, 402, 403, 448, 449, 450, 451, and 452-461.)

7

By way of example only, for purposes of showing the extent to which Judge Gleeson has become familiar with the issues that arise in the various Depakote lawsuits, Judge Gleeson has had to decide the following issues in ruling on the various discovery matters in the St. Clair County cases:

1) What is the scope of "relevance" for discovery related to Plaintiffs' claims—i.e., what subjects or categories of information are reasonably calculated to lead to the discovery of admissible evidence? (Judge Gleeson has already determined that the scope of information relevant for discovery purposes is not necessarily limited to what may be admissible at trial.)

2) What is the scope and complexity of Abbott's repository of responsive documents and ESI; what would be involved in searching for, collecting, and producing responsive information; and what is a reasonable timetable for Abbott to complete production of responsive information? (Judge Gleeson has held at least two hearings addressing this issue, offering guidance and input to the parties in an effort to decide on a timetable that was fast enough to satisfy Plaintiffs but feasible for Abbott.)

3) What forms of ESI does Abbott maintain that may be relevant and discoverable in this case, what steps should the parties be required to take to preserve ESI, and what are the appropriate formats for production of ESI? (After two hearings, Judge Gleeson entered a protocol regarding ESI that included contested provisions regarding the parties' preservation obligations, and agreed provisions regarding the format for production of all forms of ESI except e-mail.)

4) In what format should Abbott be required to produce e-mails? (Judge Gleeson has heard arguments on this issue and determined, as a general matter, that e-mails should

8

be produced in "native" or "near-native" format, but the precise format in which Abbott must produce its e-mails remains in dispute.)

5) Should Plaintiffs be entitled to discovery Abbott's entire database of adverse events related to Depakote, or only those pertaining to birth defects? (Judge Gleeson has already determined that, subject to Abbott's redaction of information protected by medical privacy laws, the Plaintiffs should be entitled to discover the entire database of adverse events related to Depakote).

6) Should Plaintiffs be entitled to discover documents produced by Abbott or by experts in previous litigation involving birth defects and Depakote? (Judge Gleeson determined Plaintiffs are entitled to discover such information subject to Abbott's withholding information protected by health privacy laws.)

7) To what extent should confidential information produced by Abbott be used in other Depakote litigation? (Judge Gleeson has determined that Plaintiffs' counsel should be limited to using the documents in other cases involving the same claims and issues and in which they are actually representing a litigant.)

8) To what extent should Abbott be permitted, during the course of the Depakote litigation, to have *ex parte* contact with physicians who prescribed Depakote to Plaintiffs or biological mothers of Plaintiffs? (Judge Gleeson has determined that Abbott should be prohibited from *ex parte* contact with those physicians regarding their past prescribing behaviors and past awareness or lack of awareness of the birth defect risks associated with Depakote.)

9

9) Is Abbott's litigation hold notice for the *Weir* lawsuit protected by the attorney-client or work product privileges? (Judge Gleeson determined Abbott failed to prove the document was protected by either privilege.)

In summary, Judge Gleeson has previously considered many issues that would be relevant to all of the Plaintiffs in the Depakote Cases pending in St. Clair County, Madison County, and Cook County. So far Abbott has produced approximately 60,000 documents (over 1,000,000 pages) under such orders, and it is undisputed that many, many thousands of additional documents and ESI files will be forthcoming in future productions.

### B.    Madison County Case

███████ *et al. v. Abbott Laboratories, Inc.*, Case No. 11-L-737, was filed in the Third Judicial District, Madison County, Illinois, on July 28, 2011. (Ex. A at 136-148.) On September 14, 2011, *Pyszkowski* Plaintiffs served several identical discovery requests to those served in *Weir* regarding the same topics, requests, information, and documents. Abbott responded to Plaintiffs' requests with virtually identical responses and objections to those given in *Weir*, but has failed to produce a single responsive document.

### C.    Cook County Cases

█████ *et al. v. Abbott Laboratories, Inc.*, Case No. 2011-L-004045, was filed in the Circuit Court of Cook County, Illinois, County Department, Law Division, on April 18, 2011. (Ex. A at 92-102.) Discovery has yet to be propounded. ███████ *et al. v. Abbott Laboratories, Inc.*, Case. No. 2011-L-008508, was filed in the Circuit Court of Cook County, Illinois, County Department, Law Division, on August 15, 2011. (Ex. A at 103-123.) Discovery has yet to be propounded. ███████ *et al. v. Abbott Laboratories, Inc.*, Case. No. 2011-L-008510, was filed

in the Circuit Court of Cook County, Illinois, County Department, Law Division, on August 15, 2011. (Ex. A at 29-48.) Plaintiffs have not yet propounded discovery in this case.

## ARGUMENT

This Court may consolidate and transfer civil actions that are pending in different judicial circuits to one judicial circuit when they involve common factual or legal issues. Specifically, Supreme Court Rule 384 states:

> When civil actions involving one or more common questions of fact or law are pending in different judicial circuits, and the supreme court determines that consolidation would serve the convenience of the parties and witnesses and would promote the just and efficient conduct of such actions, the supreme court may, on its own motion or on the motion of any party filed with the supreme court, transfer all such actions to one judicial circuit for consolidated pretrial, trial, or post-trial proceedings.

S. CT. RULE 384. The nine Depakote Cases involve countless common questions of law and fact regarding Abbott's knowledge of the teratogenic effects of Depakote and the inadequacy of its warnings to doctors and patients about such dangers. Consolidation will eliminate duplicative discovery and pretrial litigation, prevent inconsistent pretrial and trial rulings, and thereby promote judicial efficiency. Further, consolidation will serve the convenience of the parties and witnesses by allowing the parties to coordinate document discovery and a single set of depositions of the key witnesses.

The Circuit Court of St. Clair County is the most appropriate forum for consolidation. The first and most advanced of the Depakote Cases was filed there on August 17, 2010: ▮▮▮▮ ▮▮▮▮▮▮ et al v. Abbott Laboratories, Inc., Case No. 10-L-422. (Ex A at 149-183.) Additionally, the majority of the Depakote Cases are currently pending in St. Clair County. (Ex. A at 1-28, 49-91, 124-135, and 149-183.) As a result, Judge Gleeson has already confronted, familiarized himself with, and decided a number of foundational pre-trial and discovery issues

11

A15

that will have to be established in each and every Depakote birth defect lawsuit. (Ex. B at 60, 177, 178, 402, 403, 448, 449, 450, 451, and 452-461.) Combined with the Madison County case adjacent to St. Clair County, a full two thirds of the pending Depakote Cases are in or near St. Clair County.

According to the Committee comment, Rule 384 is based upon, but is much broader than, the federal statute governing multidistrict litigation, 28 U.S.C. § 1407. The Illinois rule not only covers cases involving common questions of fact, but includes cases which involve common questions of law as well. Additionally, Rule 384 provides for the transfer of the related cases for trial or post-trial proceedings, and not solely for pretrial proceedings.

Since 28 U.S.C. § 1407 was the source of Rule 384, this Court can consider case law from the federal courts in relation to § 1407, which has generated considerably more jurisprudence since its earlier inception. The Judicial Panel on Multidistrict Litigation has recognized that pharmaceutical products liability cases are particularly well-suited for consolidation because they involve common questions concerning the "development, testing, manufacturing and marketing" of the products. *In re Accutane Products Liability Litigation*, 343 F.Supp.2d 1382 (J.P.M.L. 2004). See also, *In re Trasylol Products Liability Litigation*, 545 F. Supp. 2d 1357 (J.P.M.L. 2008) (common questions regarding the safety profile of a drug and the manufacturer's warnings): *In re Vytorin/Zetia Mktg., Sales Practices & Products Liability Litigation*, 543 F. Supp. 2d 1378 (J.P.M.L. 2008) (common questions regarding the use and/or marketing of two pharmaceutical drugs). In *In re Paxil Products Liability Litigation*, 296 F.Supp.2d 1374 (J.P.M.L. 2003), centralization was warranted of twelve actions pending in different districts, and four potential tag-along actions, where the cases alleged that the pharmaceutical defendants knew of side effects of a widely-used anti-depressant drug and either

12

concealed, misrepresented, or failed to warn of them. The Panel concluded that the actions involved common questions of fact, and consolidation would serve the convenience of the parties and witnesses and was necessary to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary.

These considerations apply in the case at bar. Each of the nine pending Depakote Cases involve common factual and legal questions concerning Abbott's development, testing, manufacturing, and marketing of Depakote, and the warnings Abbott provided concerning the drug. All of the complaints filed in the Depakote Cases contain the same allegations regarding Abbott's prior knowledge of Depakote's intolerable risks and the wholly inadequate warnings it provided to healthcare providers and patients. The fact that Plaintiffs in the various Depakote Cases have already begun to file identical discovery requests in their respective cases illustrates the commonality of the Depakote Cases' factual and legal issues.

Furthermore, by way of example, the following are issues which have been or will have to be addressed and decided in each and every Depakote birth defect lawsuit:

1) The scope and timetable of discovery—a number of specific issues of which have already been decided by Judge Gleeson as enumerated above

2) The applicable law governing Plaintiffs' claims—whether the substantive law of Illinois, where the product was made and the defects occurred, or the laws of the various states where Plaintiffs suffered their injuries.

3) Whether Abbott's product labeling for Depakote was and remains, as Plaintiffs contend, inadequate as a matter of law to support the "learned intermediary" defense Abbott has asserted.

13

4) Whether sufficient scientific evidence exists to establish "general causation"—namely, that *in utero* exposure to Depakote can cause the specific birth defects suffered by Plaintiffs.

5) Whether, as Plaintiffs contend, evidence of "specific causation" exists as a matter of law with respect to certain of Plaintiffs' birth defects.

Consolidation is, therefore, "necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary." *In re Accutane Products Liability Litigation*, 343 F.Supp.2d at 1383. Consolidation would not only permit the parties to coordinate document discovery and allow a single set of depositions of Abbott's key witnesses; it would also facilitate the efficient disposition of a number of universal and fundamental substantive questions applicable to all or most Plaintiffs' cases without the risk of inconsistent adjudication of those issues between various courts. It is apparent from Abbott's continuous practice of stonewalling Plaintiffs' discovery efforts thus far, some as routine as a corporate deposition notice, disputes will not be easily resolved without judicial intervention. Consolidation would keep duplicative motions and hearings to a minimum and thereby promote efficiency and justice envisioned by Rule 384.

Furthermore, the Twentieth Judicial Circuit Court of St. Clair County is the best choice for a forum to consolidate for several reasons. In *In re Metoprolol Succinate Patent Litigation*, 329 F.Supp.2d 1368 (J.P.M.L. 2004), the court held that the Eastern District of Missouri was the appropriate transferee district for a centralized patent infringement actions dealing with the validity of two complex pharmaceutical patents in part because the district was the location of the first-filed action and pretrial proceedings were already well underway. And in *Bemis v. State Farm Fire and Cas. Co.*, 388 Ill.App.3d 687 (Ill. App. Ct. 2009), appeal allowed, 232 Ill.2d 577,

14

vacated, 919 N.E.2d 349, this Court granted the defendant's motion to transfer a case to another county for consolidation with other cases because the presiding trial judge "had had considerable experience in addressing the issues raised" in the other cases. After some disagreement over which judge would hear the newly transferred case in *Bemis*, this Court issued a supervisory order correcting, *nunc pro tunc*, its own previous order to specify that the transferred case should be heard by the *same* judge as the other cases, not simply in the same circuit. *Id.*

In the case at bar, most of the filed cases are pending in the Circuit Court of St. Clair County. In fact, the first filed Depakote case is pending there. The Depakote Cases in St. Clair County are at the most advanced stage; significant discovery is being conducted and no less than ten substantive disputes have already been resolved by motions, hearings, and court orders. Further, all of the St. Clair County Depakote Cases are currently being handled by the same judge, Judge Gleeson, who is familiar with the parties and issues. No other Circuit Court in Illinois has considered a single issue or held even one hearing involving a Depakote case. Therefore, consolidating and transferring the Depakote Cases to the Circuit Court of St. Clair County—the only court with any experience addressing the issues raised or in dealing with the parties involved——will promote the just and efficient resolution of the Depakote Cases.

## CONCLUSION

For the foregoing reasons, Plaintiffs, ██████ a minor, by Rhealyn Alexander, individually and as the minor's parent and next friend, respectfully request the Court for an order transferring existing and future Depakote Cases to the Circuit Court of St. Clair County for consolidated and coordinated proceedings against Defendant, Abbott Laboratories, Inc.

15

Respectfully submitted,

_____
Lloyd M. Cueto, IL 06292629
LAW OFFICE OF LLOYD M. CUETO
7110 West Main Street
Belleville, IL 62223
Phone: (618) 277-1554
Facsimile: (618) 277-0962

Christopher Cueto, #06192248
LAW OFFICE OF CHRISTOPHER CUETO, LTD.
7110 West Main Street
Belleville, IL 62223
Phone: (618) 277-1554
Fax: (618) 277-0962

Robert L. Salim, Bar #11663
ATTORNEY AT LAW
1901 Texas Street
Natchitoches, LA 71457
Phone: (318) 352-5999
Fax: (318) 352-5998

Ralph D. McBride
Douglas A. Daniels
BRACEWELL & GIULIANI LLP
711 Louisiana Street, Suite 2300
Houston, Texas 77002-2781
Phone: (713) 223-2300
Fax: (713) 221-1212

Kenneth T. Fibich
FIBICH HAMPTON LEEBRON
BRIGGS & JOSEPHSON, LLP
1150 Bissonnet
Houston, TX 77005
Phone: (713) 751-0025
Fax: (713) 751-0030

Jeffrey D. Meyer
THE MEYER LAW FIRM, P.C.
510 Bering, Suite 300
Houston, Texas 77057
Phone: (713) 974-4100
Fax: (713) 974-0225

William M. Audet
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco, CA 94105
Phone: (415) 568-2555
Fax: (415) 568-2556

John T. Boundas, #06236743
WILLIAMS KHERKHER HART BOUNDAS, LLP
8441 Gulf Freeway, Suite 600
Houston, TX 77017
Phone: (713) 230-2200
Fax: (713) 643-6226

ATTORNEYS FOR PLAINTIFFS

17

# IN THE SUPREME COURT OF ILLINOIS

████████ a minor, by RHEALYN ALEXANDER, individually as parent and next friend of ████████ )
)
)
)

        Plaintiffs, )

v. )        Case No.
)

ABBOTT LABORATORIES, INC., )
)

        Defendant. )

## ORDER

This cause comes before the Court upon the Plaintiffs' Motion. For good cause shown and pursuant to Illinois Supreme Court Order 384:

_____ The Illinois Supreme Court hereby orders that all the Depakote Cases listed below, as well as subsequently filed related actions, are hereby transferred to the Circuit Court of St. Clair County for consolidated proceedings against Defendant, Abbott Laboratories, Inc.

| | |
|---|---|
| ████ *et al. v. Abbott Laboratories, Inc.* | St. Clair County Case No.10-L-651 |
| ████ *et al. v. Abbott Laboratories, Inc.* | Cook County Case No. 11-L-8510 |
| ████ *et al. v. Abbott Laboratories, Inc.* | St. Clair County Case No. 11-L-27 |
| *Brumfield, et al. v. Abbott Laboratories, Inc.* | St. Clair County Case No. 11-L-143 |
| ████ *et al. v. Abbott Laboratories, Inc.* | Cook County Case No. 11-L-4045 |
| ████ *et al. v. Abbott Laboratories, Inc.* | Cook County Case No. 11-L-8508 |
| ████ *et al. v. Abbott Laboratories, Inc.* | St. Clair County Case No. 11-L-583 |
| ████ *et al. v. Abbott Laboratories, Inc.* | Madison County Case No. 11-L-737 |
| ████ *et al. v. Abbott Laboratories, Inc.* | St. Clair County Case No. 10-L-422 |

_____ Plaintiffs' Motion to Consolidate is hereby denied.

_____     _____

Date                       JUSTICE

A22