# EXHIBIT "S"

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **B.P., A MINOR, BY DAWN FRAGNOLI INDIVIDUALLY AS PARENT AND NEXT FRIEND,** | ) **Case No. 13-cv-324-SCW** |
| | ) |
| | ) |
| | ) |
| **PLAINTIFFS,** | ) |
| | ) |
| **H.C., A MINOR, BY MICHELLE CASSIDY INDIVIDUALLY AS PARENT AND NEXT FRIEND,** | ) **Case No. 13-cv-325-SCW** |
| | ) |
| | ) |
| | ) |
| **PLAINTIFFS,** | ) |
| | ) |
| **J.B., A MINOR, BY LINDA LEJEUNE INDIVIDUALLY AS LEGAL CUSTODIAN AND NEXT FRIEND,** | ) **Case No. 13-cv-326-SCW** |
| | ) |
| | ) |
| | ) |
| **PLAINTIFFS,** | ) |
| **v.** | ) |
| | ) |
| **ABBOTT LABORATORIES, INC.,** | ) **JURY TRIAL DEMANDED** |
| | ) **ON ALL COUNTS** |
| **DEFENDANT.** | ) |

**DISCOVERY ISSUES FOR CONSIDERATION
AT THE JUNE 6, 2013 DISCOVERY CONFERENCE**

Plaintiffs respectfully submit the following issues for consideration at the June 6, 2013 Discovery Conference.  These issues were discussed by the Parties during telephone conferences on May 14, May 20 and June 3, 2013.

**A.     GENERAL TOPICS**

**31.     Abbott's Databases**

In its April 30, 2013 Memorandum and Order (the "April 30 Order"),[1]  the Court ordered Abbott to provide certain information about its databases to Plaintiffs and directed the parties to meet and confer on how Abbott should search those databases.   Abbott provided some information on its databases on May 9,[2] then provided information on additional databases on

---

[1] Dkt. No. 22 in Cause No. 13-cv-324-SCW, *B.P., a minor, by Dawn Fragnoli, individually as parent and next friend v. Abbott Laboratories, Inc.* (the "Fragnoli Dkt.").  Unless otherwise noted, documents cited to from the Fragnoli Dkt. were similarly entered in the Cassidy and LeJeune dockets before this Court.

[2] *See* May 9, 2013 letter from D. Sangiamo, attached as Exhibit A.

May 13.[3]  During the parties' May 14, 2013 meet and confer, Plaintiffs provided their position that Abbott should search each of its databases for responsive documents and produce those documents.  When Plaintiffs asked Abbott for its proposal on searching its own databases, Abbott had no suggestions.  Abbott specifically stated, "we did not come into this call with a particular thought in mind."  Abbott agreed to provide additional information on its databases to Plaintiffs by May 17.  On May 17, Abbott responded to the Ivy Requests for Production ("Ivy RFPs").[4]  In response to RFPs regarding its databases, including basic requests for field lists and standard operating procedures, Abbott did not produce the discoverable and responsive documents but rather simply stated that "production of documents from Abbott databases is the subject of ongoing negotiations with Plaintiffs."[5]  On May 22, Abbott provided a series of reports from 3 of the 24 databases identified in its May 13 letter.[6] As of May 31, Plaintiffs have received no additional information from Abbott.  In essence, the parties are only very minimally further along than they were at the last hearing before this Court.  For example, on the critical subject of Abbott's RIMS database (that catalogs many of Abbott's archived Depakote documents which may have particular importance in some of the bellwether trials), Abbott still has not produced the field data it represented over a month ago in Court it would produce, nor has it produced any report from the RIMS database despite repeated requests from Plaintiffs and this Court's order that Abbott search its databases.

Therefore, Plaintiffs respectfully request that the Court order Abbott (i) to fully search all databases that may contain data responsive to Plaintiffs' discovery requests; (ii) to produce (a) a field list from the RIMS database, (b) all metadata in the RIMS database relating to any Depakote-related documents, (c) a searchable index of all documents in the RIMS database relating to Depakote and (d) all reports or responsive documents generated from any searches of the RIMS database for responsive documents; and (iii) to produce to Plaintiffs all responsive, non-privileged documents by no later than June 10, 2013.

### Abbott's Response:

Perhaps not surprisingly, Abbott disagrees entirely with Plaintiffs' description of what has occurred and where matters currently stand.

First, Abbott takes issue with Plaintiffs' suggestion that Abbott was unprepared for the May 14, 2013 meet and confer.  Plaintiffs acknowledge that the Court's April 30, 2013 Memorandum and Order required the parties to confer on how Abbott should search its databases once Abbott provided Plaintiffs with information about the nature of the databases.  Despite having been informed about the content of and different search capabilities of the various databases, Plaintiffs displayed little interest in conferring about how these databases should be searched.  Rather, Plaintiffs' position during the May 14, 2013 meet and confer, with the exception of Mr. Boundas who expressed an interest in prioritizing the RIMS database, was simply that Abbott should search everything and give them everything.

---

[3] *See* May 13, 2013 letter from D. Sangiamo, attached as Exhibit B.
[4] Abbott's Responses and Objections to Plaintiffs' First Set of Requests for Production Originally Served in *Eiyana Ivy*, et al. v. Abbott Laboratories, Inc. are attached as Exhibit C.
[5] *Id.* at Response to Ivy RFP Nos. 26-35, 38-40.
[6] *See* May 22, 2013 letter from J. Rose, attached as Exhibit D.

With Plaintiffs unwilling to engage in the process for searching the databases, Abbott generated its own proposal and provided it to Plaintiffs on May 20, 2013.[7]  Any mention of that detailed proposal is absent from Plaintiffs' summary above.  Abbott proposed to search the following databases and provide Plaintiffs with a report of the search results for Plaintiffs' review: EDocs, GEARS, PharmaDocs, RIMS, GMI Lit / PRI Lit, IMPACT and INSIGHT. Abbott also informed Plaintiffs that in connection with the Defendant Fact Sheet it would produce sales-related documents from four other databases—SNAP, MAX, Keystone and OMEGA—and documents about Abbott's responses to inquiries the company receives about Depakote from the AIRMS and MIRSWeb databases.  Abbott similarly proposed that it would produce responsive documents from the EPass database, which contains sales training and promotional materials.  Abbott did not propose to conduct searches in the GLS or RACM databases, which contain documents duplicative of what was contained in regulatory files already produced.  Thus, Plaintiffs' suggestion that Abbott merely provided reports on 3 of 24 databases is misleading and ignores the rest of Abbott's proposal and the rationale underlying that proposal.

Without any guidance from Plaintiffs, Abbott initially worked on searches and search reports for the databases that appeared to have the most relevant documents.  On May 22, 2013, two days after Abbott's proposal, Abbott provided to Plaintiffs a 194-page report from EDocs, five reports from GEARS, and eight reports from PharmaDocs.  While Plaintiffs complain that they have not received more from other databases, in the two weeks since they received the reports from these databases they have yet to provide Abbott with any response or feedback about the content of the reports or the documents they would like produced from those databases.

Early this morning, Abbott produced a 935-page report of search results from the RIMS database.  After initially generating the RIMS search results, Abbott found that some of the descriptions contain privileged or work product information.  As a result, production of the search report for RIMS took additional time to understand the report and to allow for redactions to be made.  With a searchable index from RIMS in hand, the next step should be for Plaintiffs to review the results and inform Abbott of the documents they wish to be produced.  To the extent there is any disagreement, that can be taken up with the Court.

### 32.  Defendant Fact Sheets

Abbott states in each of the Defendant Fact Sheets ("DFS") it provided:

**Abbott states that the information provided herein was obtained by conducting queries of systems and/or databases likely to contain responsive information. The information provided by Abbott is subject to the time limitations of its available databases.** Abbott further states that if data is not provided in response to a given section of the DFS, a query of the necessary systems and/or databases yielded no data or the requested data was otherwise

---

[7] *See* May 20, 2013 Letter from J. Rose to Plaintiffs' Counsel, attached hereto as Exhibit 1.

unavailable or inaccessible to Abbott. It is a limitation of any system and/or database that, in certain circumstances, reliable data cannot be obtained.[8]

Abbott's position that it is only required to query its systems and databases, when it knows that these systems and databases do not have data going back to the mid-1990s (or earlier), is inappropriate, especially considering that two of the three bellwether plaintiffs were born in 1994 and 1995.  The idea that this remotely fulfills Abbott's discovery obligations is simply absurd.  This position has led to severely deficient DFS that contain virtually no information.[9]  Abbott should be ordered to undertake a good-faith effort to find and then should produce discoverable information beyond its existing "systems and databases," and provide substantive responses to the DFS in each bellwether case, by no later than June 10, 2013.

**Abbott's Response:**

The DFSs cover information that may be in the defendant's possession that is specific to the plaintiff's case.  The kinds of information at issue are (1) identification of sales representatives who made sales calls to a given doctor, (2) the existence of inquiries from doctors/plaintiffs and responses thereto, (3) details concerning distribution of product samples to a given doctor, (4) supervisors and territories, (5) investigations of sales representatives, (6) information about attendance of doctors at conferences, and (7) notes of meetings between sales representatives and individual doctors.  This type of information is maintained by Abbott in databases, each of which goes back only for a finite period of time.  There is no other repository of this information to which Abbott can turn.  The fact that plaintiffs elected to wait more than 15 years to file suit naturally has consequences regarding the scope of information that will be available.  There is no other source of information that Abbott can reasonably search.

### 33.   Firm Deadline for Abbott to Produce all Documents Ordered by the Court

With just over six (6) months left before the discovery cut-off in this case, it is absolutely critical that Abbott exhibit good faith in its discovery conduct.  It is also essential that Abbott respond expeditiously and adequately to all discovery requests and produce all responsive documents.  Despite the previous discovery hearings before this Court, Abbott's current discovery conduct reflects its continued propensity to delay the discovery process to Plaintiffs' substantial detriment.  By way of example, since the three bellwether cases were opened in this Court on April 4, 2013, and after two discovery hearings resulting in two orders from this Court, Abbott has produced a mere 19,852 pages directly in these Illinois Depakote cases.[10]  When questioned recently by Plaintiffs about its lack of production, Abbott responded that it did not know when it would make additional production, and it did not know of any deadline for its production.  Abbott also stated that it did not know what percentage of the responsive documents it had produced, and it planned to make rolling productions but did not know how voluminous or frequent that rolling production would be.  Further, as demonstrated by Abbott's deficient responses to the Defendant Fact Sheet, discussed in more detail below, Abbott is not taking good faith measures to search for responsive documents – it is not enough that Abbott merely search

---

[8] *See* Fragnoli DFS, attached as Exhibit E, Cassidy DFS, attached as Exhibit F, and LeJeune DFS, attached as Exhibit G, at Section I (emphasis added).

[9] *See generally* Exhibits E-G.

[10] Plaintiffs also recently received approximately 110,000 pages of additional "custodial file" hardcopy documents in the *Dotegowski* case that were omitted in many cases for many months from Abbott's initial production of those "custodial files." And these were only produced after Plaintiffs questioned whether Abbott had actually searched and produced hard copy documents or merely relied upon electronic searches.

databases (although as discussed above it has not even yet done that), some of which Abbott knows are date-limited and therefore will not contain all responsive documents.   Abbott must also take measures to actually locate and identify responsive documents or information.  Abbott should be ordered to produce the responsive documents in its possession, period.  In order to instill in Abbott the requisite sense of urgency to fully and timely comply with all of its discovery obligations, Plaintiffs respectfully request that the Court order a hard deadline of June 10, 2013, for Abbott to provide full and complete document production and full and complete answers to written discovery.

**Abbott's Response:**

Needless to say, Abbott rejects out-of-hand plaintiffs' suggestion that Abbott has not "exhibited good faith in its discovery conduct" and that "Abbott is not taking good faith measures to search for responsive documents."  Abbott has produced well over 2.5 million pages of documents in this litigation and long ago produced to plaintiffs the extract from the AEGIS database that gives plaintiffs access to, and even searching capability of, all relevant Depakote adverse event data.

When discovery reopened in the Southern District of Illinois in early April 2013, plaintiffs initiated a discovery barrage, serving in the ensuing 60 days:

- 11 sets of requests for production totaling approximately 350 requests;

- multiple sets of requests for admission totaling 172 requests;

- a 49-topic corporate representative notice, with an additional 11 document requests; and

- multiple sets of interrogatories, containing interrogatories such as:  "Provide the gender and age of each individual employed by Abbott to work on any Depakote manufacturing line as of January 1, April 1, July 1 and October 1 for each year from 1978 to the present."

It appears that service of discovery is a goal in itself.

In addition to responding to this avalanche of paper, Abbott has produced over 125,000 pages of documents since discovery resumed in April, is in the process of searching for documents from 40 additional custodians (in addition to the original 21 and in addition to custodial files of sales representatives as called for in the DFSs), gathered and provided considerable information concerning its databases, and gathered and provided considerable information in the DFSs.  Despite its best efforts, Abbott anticipates that it will need an additional 15 days – up to June 25 – to complete its production of the documents described in the Court's April 30th order.[11]  Abbott proposes to continue to produce these responsive documents on a rolling basis within this additional time period, the next such production occurring on June 10.

---

[11] This is subject to whatever requests plaintiffs may ultimately make based on the database reports that Abbott has provided.

Just so that there is no mistaking Abbott's position, Abbott absolutely stands behind its discovery efforts in this litigation and believes that it has produced a tremendous volume of documents in light of the fact that there has been essentially ten months of active discovery in these cases.

Abbott proposes that the parties proceed as follows. As is standard in litigation of this type, Abbott will continue its production of documents on a rolling basis. By June 30, or at such other time at which plaintiffs will have stopped serving document requests and will have identified for Abbott which documents they would like from the database reports that Abbott has submitted to them, the parties will attempt to agree to a schedule for the completion of document productions and will seek guidance from the Court if they are unable to agree. Abbott commits to continuing to work in good faith. As always, Abbott remains open to guidance from plaintiffs on prioritization of productions. For example, to the extent that plaintiffs seek to depose an Abbott witness whose custodial file has not yet been produced, Abbott will expedite the production of that file so that the deposition can go forward. Similarly, if, for example, plaintiffs would like to accelerate Abbott's supplementation of its production of marketing plans, Abbott can do that as well.

### 34.    Abbott's Rule 26 Initial Disclosures[12]

Abbott's Rule 26 disclosures are emblematic of Abbott's lax approach to the discovery process. Despite the facts that (a) Depakote (in some formulation) has been on the market for nearly 35 years; (b) Abbott currently employs over 90,000 individuals (and has employed countless others since Depakene's introduction in the United States in 1978); (c) Abbott sent its legal hold to over 110 current employees; (d) Abbott has "voluntarily" produced portions of 21 custodians' files and is apparently "voluntarily" searching 17 additional custodians' files; and (e) Abbott has known the name of the bellwether plaintiffs' treating physicians for several weeks, Abbott has identified only **four** people that may have relevant knowledge that Abbott may use to support its defense. That list simply strains credulity.

Even more incredible, however, is Abbott's cursory listing of only **three** categories of documents in its possession, custody or control that may support its defenses. Despite the clear language of Rule 26(a)(1)(A)(ii) that Abbott either produce a copy of "all" such documents or provide "a description by category ***and location***," Abbott has done neither.

Plaintiffs request that the Court order Abbott to fully supplement its Rule 26 disclosures to provide a good-faith listing of individuals with relevant knowledge and documents, as well as produce all such documents or provide the location for such documents, by no later than June 10, 2013.

### Abbott's Response:

Plaintiffs' request that the Court order Abbott to provide a listing "of individuals with relevant knowledge and documents" reflects a fundamental misunderstanding of Fed. R. Civ. P. 26(a)(1).

---

[12] Abbott's Rule 26 Disclosures are attached hereto as Exhibit H.

The initial disclosure obligations do not require that a party identify all individuals with knowledge of the issues in the case or all relevant documents, but rather require that parties disclose information that they "may use to support [their] claims or defenses." Fed. R. Civ. P. Civ. 26(a)(1)(A)(i), 26(a)(1)(A)(ii) & amendment notes ("The scope of the disclosure obligation is narrowed to cover only information that the disclosing party may use to support its position."). See also Robinson v. Moran, 2007 WL 2915620, at *3-4 (C.D. Ill. Oct. 5, 2007) (defendants not required to disclose document in initial disclosures, as there had been no showing that they intended "to *use* the [document] in any way" and thus "they were not required to disclose it'") (emphasis in original); Traveler v. CSX Transp., Inc., 2006 WL 2051732, at *1 & n.1, *2 (N.D. Ind. July 20, 2006) (defendant not required to list particular person as a potential witness in its Rule 26(a) disclosure because there was no showing that defendant might use this person in support of its defenses; focus of Rule 26(a)(1)(A) was not on "each individual who had anything to do with the case"). The standard is intent to use, not relevance.

Abbott's Rule 26(a) disclosure was entirely proper. Abbott's defense of these cases is not complicated: Plaintiffs sue for failure to warn of an injury. Abbott unambiguously warned of that injury. It does not take a lot of company witnesses or documents to present that case.[13] Abbott may also use testimony from plaintiffs' treating physicians, particularly the prescribing physician who will testify about his or her knowledge of the risk of birth defects. Plaintiffs will presumably attempt to find ways to avoid the effect of the warning. As Abbott does not yet know what evidence plaintiffs will attempt to use to accomplish that objective, Abbott is unable to identify witnesses and documents that it will use in response.

## 35.  **Abbott's Objections regarding Timeframe**

Consistent with Abbott's general disregard for court orders with which it disagrees, Abbott consistently objects to responding and/or producing documents after the births of the bellwether plaintiffs. *See, e.g.*, Exhibit I (Response to Subpoena Duces Tecum) Category No. 11; Exhibit J (Response to 30(b)(6) Deposition) Topic Nos. 18-21, 23, 25, 26, 28, 30-31, 34-41; and Exhibit K (Response to Requests for Production) Nos. 21, 70, 71, 78-86, 93-95, 99-101, 111, 117-122, 132-143, 147-152, 162-183, 190-195, 205-207, 211-213. This issue has already been resolved by the Court. The Court ruled on April 19, 2013 that discovery should not be cut off after the 2003 birth of the youngest bellwether plaintiff.[14] The Court should overrule all of Abbott's objections that certain requests seek documents and/or information after the births of the bellwether plaintiffs.

Abbott's Response:

In response to plaintiffs' requests for marketing documents only, Abbott has preserved an objection to production of documents that post-date the date of birth of the latest of the bellwether plaintiffs and to production of documents that relate to marketing of Depakote for mania and migraines, uses of the product inapplicable to the bellwether plaintiffs. Abbott has explained to plaintiffs that it does not intend to withhold documents on these grounds for purposes of the collections and productions it is currently conducting. Abbott nevertheless feels that it is appropriate to maintain the objections to avoid a claim of waiver should circumstances warrant their invocation. For example, should there be a discrete set of documents that relate to marketing Depakote specifically for mania in 2012, and that set of documents would require a separate collection undertaking, Abbott would like to preserve its right not to undertake to collect those documents as they would be plainly irrelevant and would not warrant the burden associated with the collection, particularly as the parties are working to get the bellwether cases ready for trial in March 2014.

---

[13] Expert witnesses will also testify in this matter, but they are not required to be disclosed under Rule 26 at this time.

[14] *See* Fragnoli Dkt. No. 19.

### 36.    <u>Non-Epilepsy Documents</u>

Several of Plaintiffs' discovery requests, including Subpoena Duces Tecum ("SDT") Category No. 11[15] and Consolidated Plaintiffs' Request for Production ("CP RFP") Nos. 62, 63 and 251[16] seek information specifically related to migraine or mania or general off-label promotion.  Abbott seeks to limit its production by excluding documents related to the use of Depakote for anything other than epilepsy/seizure disorder, arguing that each of the three bellwether Plaintiffs' mothers were prescribed Depakote only for epilepsy.  Abbott's position is untenable.  Like the relevant time period issue this Court has previously addressed, there are numerous Plaintiffs among the 320 on file in Illinois who were prescribed Depakote for something other than epilepsy/seizure disorder.  Further, documents on indications other than epilepsy/seizure disorder are likely to lead to the discovery of relevant and admissible evidence of, among other things, risks associated with taking Depakote.  The Court should overrule Abbott's objections and order Abbott to produce all responsive documents and fully respond to discovery about all uses of Depakote – not just epilepsy.

**<u>Abbott's Response:</u>**

See response to Item 35.

## B.    SALES AND MARKETING DOCUMENTS

A series of requests have sought the production of critical sales and marketing documents.  *See, e.g.*, Subpoena Duces Tecum Category Nos. 1, 7, 11;[17] Request for Production Nos. 5, 11, 13-15, 21, 61-77, 99-101, 111-134, 141-143, 147-149, 153-207, 211-213, 223, 232, 236, 238-242, and 247-251.[18]  To date, Abbott has made one targeted sales/marketing production comprising less than 20,000 pages.  None of the custodians selected by Abbott for production in the *Dotegowski* case were directly involved in sales or marketing.  Abbott has successfully avoided making a substantial sales/marketing production to date, and it is long past time for Abbott to produce these highly relevant documents.  The Court should overrule Abbott's objections and order Abbott to fully produce all responsive sales and marketing documents by no later than June 10, 2013.  The items below (36-50) describe sales- and marketing-related documents that Abbott must be ordered to produce by June 10, 2013:

**<u>Abbott's Response:</u>**

Plaintiffs had essentially no pending requests for internal marketing documents of the type on which they are now focused until April 2, 2013, when they served their Second, Third, Fourth, and Fifth Requests for Production and Subpoena Duces Tecum accompanying Plaintiffs' Notice of 30(b)(6) Deposition (collectively "Requests") totaling 271 separate document requests, nearly half of which sought sales and marketing documents.  As of that time, Abbott had already

---

[15] *See* Exhibit I.
[16] *See* Exhibit K.
[17] *See* Exhibit I.
[18] *See* Exhibit K.

produced a substantial number of internal marketing documents (e.g., marketing plans). Contrary to Plaintiffs' statement above, the initial 21 custodians included Jeffrey Haas, Divisional Vice President, Health Care Policy. This portion of the production of internal documents totaled more than 16,500 documents. Abbott has also produced approximately 20,000 pages of promotional and sales training materials, as Plaintiffs' apparently concede. Plaintiffs' statement that Abbott has "successfully avoided making a substantial sales/marketing production and it is long past time for Abbott to produce these highly relevant documents" thus misleadingly suggests that Abbott has been under a long-standing duty to do so and understates the nature and volume of Abbott's production to date.

On May 7, 2013, Abbott served its responses to the Requests. Contrary to the strong suggestion created by Plaintiffs' introductory paragraph above and many of the individual items that follow, Abbott's responses to the Requests stated that Abbott would be producing responsive documents after conducting reasonable searches. Moreover, as noted above, Abbott has explained to Plaintiffs that although in its responses Abbott preserved its objections to producing sales and marketing documents which either: (1) post-date the time period after the birth of the bellwether plaintiffs; and/or (2) relate to the migraine and mania indications for Depakote, Abbott will be producing its sales and marketing documents without either of these limitations. (See items 35 and 36, supra, for a further explanation of this point.)

Plaintiffs' position that Abbott should have to make its production of these documents by June 10 is unreasonable and entirely out of sync with how discovery is conducted in litigation of this scope and magnitude. Abbott refers the Court to its position as stated in Item 33, supra.

37. **Documents requested:** Depakote marketing plans, Depakote strategic or tactical plans, Depakote brand strategies, Depakote marketing and/or sales reports, and internal documents, emails or office correspondence regarding same

**Corresponding Request(s):** SDT 11, CP RFP 5, 21, 70-71, 111-113, 117-122, 205-207, 238

**Abbott's Response:**

Abbott refers the Court to Abbott's responses to these Requests, and items 35 and 36 supra, which illustrate Abbott's undertaking to produce responsive documents.

38. **Documents requested:** Depakote sales and marketing research and/or analysis, and internal documents, emails or office correspondence regarding same

**Corresponding Request(s):** CP RFP 5, 21, 99-101, 141-149, 153-176, 199-201, 214, 248-250

**Abbott's Response:**

Abbott refers the Court to Abbott's responses to these Requests, and items 35 and 36, <u>supra</u>, which illustrate Abbott's undertaking to produce responsive documents.

In addition, as stated in Abbott's responses to these Requests, Abbott objects to producing the documents requested in Request for Production Nos. 153-161 and 199-201, consisting of documents related to "Depakote's Rx share summary by condition" and market share (Request Nos. 153-155), "Depakote average daily dose" (Request Nos. 156-158), "Depakote average length of therapy" (Request Nos. 159-161) and "rebates" (Request Nos. 199-201).  It is not evident how these documents are relevant or how the request for them is reasonably calculated to lead to the discovery of admissible evidence.

**39.**   **Documents requested:**   Depakote sales representative training materials, including but not limited to "backgrounders," and internal documents, emails or office correspondence regarding same

**Corresponding Request(s):** SDT 1, CP RFP 5, 21, 72-74, 177-183, 211-213, 240-241

**Abbott's Response:**

Abbott refers the Court to Abbott's responses to these Requests, and items 35 and 36, <u>supra</u>, which illustrate Abbott's undertaking to produce responsive documents.

**40.**   **Documents requested:**   Written materials or other promotional items/materials distributed or communicated by Abbott to health care providers or other third-parties concerning the use of Depakote, including but not limited to mail-outs or "mailers," package inserts, scientific/medical articles, "sales aids," "care giver/patient education materials," pamphlets, e-mail blasts, and dear doctor letters

**Corresponding Request(s):** CP RFP 5, 21, 61-69, 126-128, 184-189, 196-198, 236, 239

**Abbott's Response:**

Abbott refers the Court to Abbott's responses to these Requests, and items 35 and 36, <u>supra</u>, which illustrate Abbott's undertaking to produce responsive documents.

**41.**   **Documents requested:**   Depakote-related advertising/promotional materials submitted to the FDA

**Corresponding Request(s):** CP RFP 5, 11, 21, 232

**Abbott's Response:**

Abbott refers the Court to Abbott's responses to these Requests, and items 35 and 36, <u>supra</u>, which illustrate Abbott's undertaking to produce responsive documents.

42.    **Documents requested:**        Abbott organizational charts or lists of personnel responsible for Depakote, including but not limited to each of the departments enumerated in SDT 7 and CP RFP 223

**Corresponding Request(s):** SDT 7, CP RFP 5, 21, 223

**Abbott's Response:**

Abbott refers the Court to Abbott's responses to these Requests, and items 35 and 36, <u>supra</u>, which illustrate Abbott's undertaking to produce responsive documents.

43.    **Documents requested:**        Continuing medical education – "CME" – materials concerning the use of Depakote for seizure disorders/epilepsy, mania and/or migraine, and internal documents, emails or office correspondence concerning same

**Corresponding Request(s):** CP RFP 5, 21, 75-77, 190-192, 243

**Abbott's Response:**

Abbott refers the Court to Abbott's responses to these Requests, and items 35 and 36, <u>supra</u>, which illustrate Abbott's undertaking to produce responsive documents.

In addition and as stated in Abbott's responses to the Requests, Abbott objects to producing the documents requested in Request for Production No. 190-192 and 243, which relate to continuing medical education regarding Depakote. In the absence of evidence that plaintiffs' prescribing physicians attended continuing medical education programs for Depakote, there is no reason why Abbott should have to undertake the burden of separately collecting such documents.

44.    **Documents requested:**        Identification of Abbott's "Key Opinion Leaders" relating to Depakote, and internal documents, emails or office correspondence regarding same

**Corresponding Request(s):** CP RFP 5, 21, 123-125, 202-204, 243

**Abbott's Response:**

Abbott agreed to produce information in its Defendant Fact Sheets regarding whether Plaintiffs' prescribing physicians were Key Opinion Leaders. It is not evident how other documents related to Key Opinion Leaders are relevant or how the request for them is reasonably calculated to lead to the discovery of admissible evidence.

**45.** <u>**Documents requested:**</u>    Depakote-related documents and materials used or disclosed in connection with conventions, meeting symposia or advisory board meetings

<u>**Corresponding Request(s):**</u> CP RFP 5, 21, 129-131, 243

<u>**Abbott's Response:**</u>

As stated in Abbott's responses to the Requests, Abbott objects to producing the documents requested in Request for Production No. 129-131 and 243. In the absence of evidence that Plaintiffs' prescribing physicians attended any of the events described in these requests, there is no reason why Abbott should have to undertake the burden of separately collecting such documents.

**46.** <u>**Documents requested:**</u>    Documents and things used in connection with focus groups concerning Depakote

<u>**Corresponding Request(s):**</u> CP RFP 5, 21, 132-134

<u>**Abbott's Response:**</u>

Abbott refers the Court to Abbott's responses to these Requests, and items 35 and 36, <u>supra</u>, which illustrate Abbott's undertaking to produce responsive documents.

**47.** <u>**Documents requested:**</u>    Depakote-related communications between Abbott and industry speakers (including, but not limited to, CME faculty)

<u>**Corresponding Request(s):**</u> CP RFP 5, 21, 208-210

<u>**Abbott's Response:**</u>

As stated in Abbott's responses to the Requests, Abbott objects to producing the documents requested in Request for Production Nos. 208-210. In the absence of evidence that Plaintiffs' prescribing physicians were such speakers or participated in CME programs, there is no reason why Abbott should have to under the burden of separately collection such documents.

48. **Documents requested:**    Communications between Abbott and each health care provider, group, or other person/entity who received financial support from Abbott in connection with their research or writing about the occurrence of birth defects in relation to Depakote

**Corresponding Request(s):** CP RFP 5, 21, 244-45

**Abbott's Response:**

Abbott refers the Court to Abbott's responses to these Requests, and items 35 and 36, <u>supra</u>, which illustrate Abbott's undertaking to produce responsive documents.

49. **Documents requested:**    Communications about Depakote between Abbott and any third-party advertising, marketing, sales, medical writing, medical education, lobbying or public relations firms or group

**Corresponding Request(s):** CP RFP 5, 21, 247

**Abbott's Response:**

Abbott refers the Court to Abbott's responses to these Requests, and items 35 and 36, <u>supra</u>, which illustrate Abbott's undertaking to produce responsive documents.

50. **Documents requested:**    Depakote-related documents, visual depictions, and/or other materials used in connection with direct marketing or direct to consumer programs

**Corresponding Request(s):** CP RFP 5, 21, 193-195

**Abbott's Response:**

Abbott refers the Court to Abbott's responses to these Requests, and items 35 and 36, <u>supra</u>, which illustrate Abbott's undertaking to produce responsive documents.

51. **Documents requested:**    Documents reflecting any analysis or investigation of the propriety of Abbott's marketing/sales practices regarding Depakote

**Corresponding Request(s):** CP RFP 5, 21, 260

**Abbott's Response:**

As stated in Abbott's responses to these Requests, Abbott objects to producing the documents requested in Request for Production No. 260.  The request is grossly

overbroad.  For example, it is not limited to analyses or investigations related to marketing/sales practices that could be in any way relevant to the plaintiffs in the instant cases.

## C.    RESPONSES TO IVY DISCOVERY[19]

**52.**    **Information requested:**    Information about individuals working on a variety of issues related to Depakote.  Abbott provided names only, and did not provide titles and years of employment.

**Corresponding Request(s):** Ivy Rog. Nos. 1, 3-4, 7-8, 10-13, 16-17

**Abbott's Response:**

Abbott's response to Ivy Interrogatory Nos. 1, 3-4, 7-8, 10-13, and 16-17 stated that Abbott would supplement its responses with the date of employment for each individual listed.  Abbott has further agreed to provide the titles of each of the employees listed in these interrogatories.  Abbott has committed to providing this information by June 17, but, at plaintiffs' request, will attempt to provide it by June 7.

**53.**    **Information requested:**    Information about individuals working on medical affairs, business analytics, training and education.  Abbott objected and refused to provide any information.

**Corresponding Request(s):** Ivy Rog. Nos. 5, 6, 15

**Abbott's Response:**

As noted in Abbott's response to Ivy Interrogatory Nos. 5-6, and 15, Plaintiffs' used the vague and ambiguous terms "Medical Affairs Department," "Business Analytics Department," and "Training and Education Department," without more specific information, in these interrogatories, and Abbott was unable to determine which personnel within what department might be responsive.  On June 3rd, Plaintiffs provided additional identifying information and as such, Abbott has agreed to supplement its response to the interrogatories by June 17.

**54.**    **Information requested:**    Information about individuals working on global labeling responsibilities.  Abbott only referred Plaintiffs to documents.

**Corresponding Request(s):** Ivy Rog. No. 9

---

[19] Abbott's Responses and Objections to Plaintiffs' First Set of Interrogatories Originally Served in *Eiyana Ivy, et al. v. Abbott Laboratories, Inc.* are attached as Exhibit L.

**Abbott's Response:**

Abbott has agreed to supplement its response to this interrogatory by June 17.

55.  **Documents requested:**    Standard    Operating    Procedures    regarding
pharmacovigilance, risk management, product
safety and regulatory affairs from 1978 to present.

**Corresponding Request(s):** Ivy RFP No. 4

**Abbott's Response:**[20]

As stated in Abbott's response to Ivy Request for Production No. 4, Abbott noted
that its productions to date contained responsive documents and that it will undertake
additional reasonable searches of relevant sources for additional responsive
documents.

56.  **Documents requested:**    All documents referring to or relating to the safety
of Depakote, including non-final drafts of such
documents.

**Corresponding Request(s):** Ivy RFP No. 5

**Abbott's Response:**

Ivy Request for Production No. 5 does not seek the documents described in Item
56's "Documents requested." Ivy Request for Production No. 5 seeks "Drafts of all
Safety Reports for Depakote, whether or not ultimately submitted to the FDA,
prepared in connection with YOUR obligations under 21 C.F.R. § 312.32 or 21
C.F.R. § 312.33."

As stated in Abbott's response to Ivy Request for Production No. 5, Abbott
objects to this Request as it seeks drafts of documents covering a time period of more
than three decades, and such drafts for that span of time may not be maintained in a
reasonably available location, if at all. Abbott also objected to this Request to the
extent it sought drafts of "Safety Reports" without any limitation as to the relevant
adverse event, i.e. birth defects.

57.  **Documents requested:**    Draft and final reports for all studies concerning
Depakote sponsored or financed in whole or in part

---

[20] For items 55 through 63, Plaintiffs recited and/or paraphrased (sometimes incorrectly) each of the
identified Ivy Requests for Production.  Plaintiffs have not indicated any reason why these Requests for Production
are included in this submission or any reason why Plaintiffs are taking issue with Abbott's response to each Request.
Consequently, Abbott has provided the Court with a summary of its response to each Request, which are more fully
provided in Exhibit C, as well as other relevant information with respect to each Request, where necessary.

by Abbott, regardless of whether the studies were published.

**Corresponding Request(s):** Ivy RFP No. 6

**Abbott's Response:**

As stated in Abbott's response to Ivy Request for Production No. 6, Abbott has already produced responsive documents, and is continuing to produce documents from the files of key players in the Depakote clinical study program.

58. **Documents requested:**     Reports, minutes, agenda or other records of any meeting or discussion of Depakote label changes.

**Corresponding Request(s):** Ivy RFP No. 7

**Abbott's Response:**

As stated in Abbott's response to Ivy Request for Production No. 7, Abbott has already produced responsive documents, and it is continuing to produce documents from the files of key players in Depakote label changes.

59. **Documents requested:**     Any document relating to any discussion or analysis of whether to require females taking Depakote to submit to pregnancy testing.

**Corresponding Request(s):** Ivy RFP No. 16

**Abbott's Response:**

As stated in Abbott's response to Ivy Request for Production No. 16, Abbott has already produced responsive documents, if any, from the electronically stored information of 21 key Abbott employees as a result of searching these documents for "Depakote" and "pregnan*," and it is continuing to gather documents from current and former employees.   These additional documents may include responsive documents.

60. **Documents requested:**     Documents comparing the teratogenic effects of Depakote to Accutane, other anti-epileptic drugs, other Abbott products, or any other products known or suspected of having teratogenic effects in humans.

**Corresponding Request(s):** Ivy RFP No. 17

**Abbott's Response:**

As stated in Abbott's response to Ivy Request for Production No. 17, Abbott has already produced responsive documents, if any, from the electronically stored information of 21 key Abbott employees as a result of searching these documents for "Depakote" and "teratogen*," and it is continuing to gather documents from current and former employees.  These additional documents may include responsive documents.

61.   **Documents requested:**   Organizational charts or human resources lists of personnel having any involvement with Depakote from 1978 to the present.

**Corresponding Request(s):** Ivy RFP No. 18

**Abbott's Response:**

As stated in Abbott's response to Ivy Request for Production No. 18, Abbott has already produced responsive documents, and additional responsive documents may be found in the upcoming productions of additional custodial files.

62.   **Documents requested:**   Internal Abbott documents and external communications between Abbott and third parties (including the FDA) regarding the relationship between folic acid and Depakote or mentioning both folic acid/folate and Depakote.

**Corresponding Request(s):** Ivy RFP Nos. 19-22

**Abbott's Response:**

As stated in Abbott's responses to Ivy Request for Production Nos. 19-22, Abbott has already produced responsive documents, if any, from the electronically stored information of 21 key Abbott employees as a result of searching these documents for "Depakote" and "folate" or "folic acid;" that responsive documents, if any, can be found in Abbott's production of the regulatory files for its Depakote products; and that Abbott is continuing to gather documents from current and former employees. These additional documents may include responsive documents.

63.   **Documents requested:**   Documents relating to any attempt by Abbott to reduce or eliminate the teratogenic effects of Depakote, through warnings or dissemination of information or otherwise, including but not limited to any attempt to require women to take pregnancy tests and/or birth control while on Depakote.

**Corresponding Request(s):** Ivy RFP Nos. 23-25

**Abbott's Response:**

As stated in Abbott's responses to Ivy Request for Production Nos. 23-25, Abbott has already produced responsive documents, if any, from the electronically stored information of 21 key Abbott employees as a result of searching these documents for "Depakote" and "teratogen*" or "pregnan*," and it is continuing to gather documents from current and former employees. These additional documents may include responsive documents.

## D.   MISCELLANEOUS

### 64.   "Custodial" Files

Plaintiffs ask the Court to order Abbott to produce "custodial files," which shall include, but not be limited to, all e-mails, letters, memoranda and other communications to any from such persons regarding Depakote, from all individuals identified in (a) Abbott's Rule 26 disclosures; (b) Abbott's response to the Ivy Rogs; and (c) the recipients of Abbott's Legal Hold.

**Abbott's Response:**

As an initial matter, Abbott has been using the search terms proposed by plaintiffs for its document productions and does not feel that it is appropriate for plaintiffs to change those terms mid-stream, as they are attempting to do here.

As plaintiffs are aware, Abbott's production of custodial files includes the witnesses identified in Abbott's Rule 26 disclosures.

In the Ivy answers to interrogatories, Abbott identified 68 current and former employees who had Depakote responsibilities covering several decades in the areas inquired into. Of these, 55 are among either the 21 original production custodians or the additional current and former employees from whom Abbott is searching for responsive documents.

For reasons Abbott has already expressed in court, Abbott believes it is inappropriate and bad policy to require a party to produce documents from all employees that it has put on a litigation hold.

Abbott has offered to plaintiffs throughout this litigation that they should feel free to identify additional employees from whom they would like for Abbott to collect and produce documents, subject to Abbott's right to object and then discuss that selection. To date, plaintiffs have not taken Abbott up on that offer. Abbott submits that a request of this type from plaintiffs should be made in good faith based on their review of Abbott's documents.

### 65.   Abbott's Responses to RFPs Quoting Abbott's Legal Hold

CP RFP Nos. 3-15 seek documents that Abbott directed over 110 people to preserve in its litigation hold.[21] In fact, these RFPs directly quote Abbott's litigation hold. Abbott presumably believed that these categories of documents were potentially relevant and discoverable, and

---

[21] *Compare* Exhibit K at 4-12 *with* Abbott's Legal Hold, attached as Exhibit M.

Plaintiffs seek production of these categories of documents.  The Court should overrule Abbott's objections and order Abbott to produce all responsive documents by no later than June 10, 2013.

### Abbott's Response:

As shown in Abbott's responses to these requests, Abbott has agreed to produce, and has produced, responsive documents.  Plaintiffs' concern is not apparent to Abbott, unless this is the same as their contention that Abbott should produce documents from everyone that it has put on litigation hold.  Abbott's position on that request is addressed in Item 64, supra.

### 66.    Identification of Accurate Depakote Labels

As first mentioned in a March 5, 2013 letter to Abbott's counsel, Plaintiffs believe that the identification of a complete and correct set of labels for the various Depakote formulations since 1978 should not be a source of dispute in this lawsuit.[22]  Abbott failed to respond to the March 5 letter, forcing Plaintiffs to issue CP RFA No. 14 and corresponding CP RFP No. 22. Attached to CP RFA No. 14 were excerpts from the Physicians' Desk Reference ("PDR") from 1979-2012 that Plaintiffs intended to include all Depakote labels for that time period.[23]  Plaintiffs used the PDR versions of the labels, as that is what Abbott produced as labels in the *Rix* case. Abbott's response to CP RFA 14 was a non-response (admitting only that the attached documents "appear[ed] to be copies of pages from" the PDR "and that the publishers of the [PDR] represent that the information contained therein is in compliance with 21 C.F.R. § 201.100(d).").[24]

In response to CP RFP 22, which requires Abbott to produce any Depakote labels not captured in the attachment to CP RFA 14, "Abbott states that it will produce non-privileged, responsive documents, if any and to the extent available, in response to this Request."[25] Plaintiffs fail to comprehend how any Depakote label – which, by definition, was supplied to health care professionals and the public – could be privileged.  Moreover, Plaintiffs fail to understand how Abbott would not have at its ready disposal all of the labels used for Depakote.

Plaintiffs ask the Court to order Abbott to (a) confirm that the PDR excerpts are the complete labels from 1979-2012 or (b) produce a complete set of labels for that timeframe, by no later than June 10, 2013.

### Abbott's Response:

As an initial matter, plaintiffs' statement that Abbott produced PDR excerpts as labels in the Rix case is erroneous.  Plaintiffs are apparently referring to the fact that an expert for the plaintiff in Rix brought a set of PDR excerpts to her deposition and she claimed that they were a set of labels.

---

[22] *See* March 5, 2013 letter from H. Novosad, attached as Exhibit N.
[23] *See* Fragnoli Dkt. No. 25 at 10 and Fragnoli Dkt. Nos. 27-31.
[24] Fragnoli Dkt. No. 26, at 13.
[25] Exhibit K at 17.

As noted in Abbott's Opposition to Plaintiffs' Motion to Compel and Motion for Sanctions filed in these cases on June 3, 2013, PDR excerpts are not identical to labels, or "package inserts" as they are known.

As shown by its discovery responses, Abbott has not taken the position that it should not have to produce package inserts. Abbott will undertake to produce a copy of all final versions of Depakote package inserts in Abbott's possession by June 21st.

### 67.   Lack of Preparation and Improper Instructions to Not Respond During 30(b)(6) Deposition

Abbott should be ordered to re-produce one or more corporate representative(s) for deposition. Generally, the topics for the deposition were the storage, deletion, backup, preservation, identification and collection of electronically stored information ("ESI") related to Depakote. This is basic information Plaintiffs have been trying to obtain virtually since the inception of these cases nearly three years ago. The corporate representative Abbott proffered for these topics (a) was not prepared to testify about a significant portion of the topics for which he was designated and (b) was improperly instructed not to answer a host of question on topics for which he was designated and that are appropriate deposition topics. For a complete discussion of these issues, please see the Motion to Compel, at 2-8. Abbott should be ordered to produce one or more corporate representatives who are adequately prepared to provide this testimony. Plaintiffs further request reimbursement of fees and costs incurred with this 30(b)(6) deposition due to Abbott's conduct.

### Abbott's Response:

Abbott refers the Court to its Opposition to Plaintiffs' Motion to Compel and Motion for Sanctions filed in these cases on June 3, 2013 providing Abbott's position regarding this topic.

### 68.   Abbott's Responses to Consolidated Plaintiffs' RFA Nos. 3-13

Consolidated Plaintiffs' Request for Admission ("CP RFA") Nos. 3–13 seek basic information regarding Abbott's responsibilities for the various formulations of its VPA (Depakote) drug products.[26] Abbott refused to provide clear, objection-free responses to these RFAs.[27] As more fully discussed in Plaintiffs' Motion to Compel and Motion for Sanctions ("Motion to Compel"),[28] Abbott's objections to RFA Nos. 3-13 should be overruled, and the Court should either deem these RFAs admitted or should order Abbott to provide clear, unqualified responses thereto by June 10, 2013.

### Abbott's Response:

Abbott refers the Court to its Opposition to Plaintiffs' Motion to Compel and Motion for Sanctions filed in these cases on June 3, 2013 providing Abbott's position regarding this topic.

---

[26] Fragnoli Dkt. No. 25, at 7-10.
[27] Fragnoli Dkt. No. 26, at 6-12.
[28] The Motion to Compel, including all exhibits thereto, is attached as Exhibit O.

### 69.   Abbott's Responses to Consolidated Plaintiffs' RFA Nos. 15-43

RFA Nos. 15–43 ask Abbott to admit certain statements recited verbatim from Abbott's current labeling for its VPA products.[29]  While acknowledging that these "statement[s were] made in labeling accompanying [VPA] products manufactured by or for Abbott,"[30] Abbott nonetheless asserted a host of meritless objections that should be overruled.  Stated simply, if the statements in Abbott's current labels are true, Abbott should give unqualified admissions to RFA Nos. 15–43; conversely, if the statements in Abbott's current labels are not true, Abbott should give unqualified denials to RFA Nos. 15–43.

**Abbott's Response:**

Abbott refers the Court to its Opposition to Plaintiffs' Motion to Compel and Motion for Sanctions filed in these cases on June 3, 2013 providing Abbott's position regarding this topic.

### 70.   Abbott's Responses to Consolidated Plaintiffs' RFA Nos. 59-70

RFA Nos. 59–70 seek Abbott's admissions regarding the content of its VPA Drug Products' labels.[31]  Abbott denied each of these requests, asserting objections based on the "relevant time period" and Plaintiffs' use of terms in its requests, and further stated that Abbott's VPA drug product labeling included "a statement regarding rates found in registry data of congenital malformation among infants born to mothers using [VPA] as compared to rates among infants born to epileptic mothers using other anti-seizure monotherapies."[32]  Abbott's answers are simply not responsive to Plaintiffs' requests.  As more fully discussed in the Motion to Compel, Abbott's objections to RFA Nos. 59-70 should be overruled, and the Court should either deem these RFAs admitted or should order Abbott to provide clear, unqualified responses thereto by June 10, 2013.

**Abbott's Response:**

Abbott refers the Court to its Opposition to Plaintiffs' Motion to Compel and Motion for Sanctions filed in these cases on June 3, 2013 providing Abbott's position regarding this topic.

### 71.   IMS Data

Plaintiffs have requested IMS prescriber data, which tracks drug prescriptions by pharmacy, prescriber, and other methods.  Plaintiffs have issued multiple requests for production of such data.[33]  Abbott responded by directing Plaintiffs to its Defendant Fact Sheets.[34]

---

[29] Fragnoli Dkt. No. 25, at 10-18.
[30] Fragnoli Dkt. No. 26, at 13-36.
[31] Fragnoli Dkt. No. 25, at 30-32.
[32] Fragnoli Dkt. No. 26, at 54-62.
[33] *See* Abbott's Responses and Objections to Consolidated Plaintiffs' Second Set of Interrogatories and Sixth Requests for Production, attached hereto as Exhibit P, at Response to RFP No. 271; *see also* Exhibit C, at Response to Ivy RFP Nos. 8, 36.
[34] *Id.*

However, in the Defendant Fact Sheets, Abbott stated that it "does not yet have authority to provide information in response to [a request regarding prescriber data]."[35]  Further, despite the existence of a protective order in these cases, Abbott has redacted IMS data from its production to Plaintiffs.[36]  Plaintiffs ask the Court to order Abbott to produce responsive IMS data by no later than June 10, 2013.

**Abbott's Response:**

A protective order in and of itself is not sufficient to authorize the release of IMS data.  Abbott is in the process of attempting to secure the authority for such release.  Abbott believes it will be in a position to provide that information by June 28th.

**72.    Privilege Log**

To date, Plaintiffs have only received a single privilege log listing two documents – a litigation hold and a litigation hold standard operating procedures document.  However, Abbott has been, at the very least, redacting documents based on assertions of privilege.[37]  Abbott should provide Plaintiffs an updated privilege log by June 10, 2013.

**Abbott's Response:**

Abbott proposes to produce a privilege log for all productions made to date by June 30. Abbott also proposes to produce a privilege log for subsequent productions within 45 days of each such production, as specified in the ESI protocol entered in this case.

Respectfully submitted,

*s./Christopher Cueto*

Christopher Cueto, #06192248
Michael Gras, #06303414
LAW OFFICE OF CHRISTOPHER CUETO, LTD.
7110 West Main Street
Belleville, IL 62223
Phone: (618) 277-1554
Fax: (618) 277-0962

Ralph D. McBride
Tony L. Visage
Phillip L. Sampson, Jr.
Heath A. Novosad
Blair R. Loocke

---

[35] *See* Exhibits E-G, at Section IV.A.
[36] *See, e.g.*, ABTDOT00343565-580, attached hereto as Exhibit Q.
[37] *See, e.g., id.* at ABTDOT00343566.

Nancy R. McEvily
BRACEWELL & GIULIANI LLP
711 Louisiana Street, Suite 2300
Houston, Texas 77002
Phone: (713) 223-2300
Fax: (713) 221-1212

Jennifer M. Salim
BRACEWELL & GIULIANI LLP
1445 Ross Avenue, Suite 3800
Dallas, Texas 75202
Phone: (214) 468-3800
Fax: (214) 468-3888

John E. Williams, Jr.
John T. Boundas
Steven J. Kherkher
Sejal K. Brahmbhatt
WILLIAMS KHERKHER HART BOUNDAS, LLP
8441 Gulf Freeway, Suite 600
Houston, Texas 77017-5051
Phone: (713) 230-2200
Fax: (713) 643-6226

William M. Audet
Joshua C. Ezrin
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco, California 94105
Phone: (415) 568-2555
Fax: (415) 568-2556

Jeff Meyer
THE MEYER LAW FIRM, P.C.
6363 Woodway Drive, Suite 720
Houston, Texas 77057
Phone: (713) 974-4100
Fax: (713) 974-0225
Kenneth T. Fibich
Erin Copeland
FIBICH HAMPTON LEEBRON BRIGGS &
JOSEPHSON, LLP
1150 Bissonnet
Houston, Texas 77005
Phone: (713) 751-0025
Fax: (713) 751-0030

Robert L. Salim
SALIM-BEASLEY, LLC
1901 Texas Street
Natchitoches, Louisiana 71457
Phone: (318) 352-5999
Fax: (318) 352-5998

Kathryn Harrington
Mark Ekonen
Amanda S. Williamson
HENINGER GARRISON DAVIS, LLC
2224 1st Avenue North
P. O. Box 11310
Birmingham, Alabama 35202
Phone: (205) 326-3336
Fax: (205) 326-3332

George Erick Rosemond
ROSEMOND LAW GROUP, PC
8441 Gulf Freeway
Suite 600
Houston, TX 77017
Phone: (713) 230-2342
Fax: (713) 649-3470

**ATTORNEYS FOR PLAINTIFFS**


    AND


   BRYAN CAVE LLP

By:  /s/ Dan H. Ball (with consent)
     Dan H. Ball
     dhball@bryancave.com
     Peter W. Herzog III
     pwherzog@bryancave.com
     Stefan A. Mallen
     samallen@bryancave.com
     211 North Broadway, Suite 3600
     St. Louis, MO  63102
     (314) 259-2000 (telephone)
     (314) 259-2020 (facsimile)

     Paul F. Strain
     Stephen E. Marshall
     Dino Sangiamo
     VENABLE LLP

750 East Pratt Street, Suite 900
Baltimore, MD  21202
(410) 244-7400

*Attorneys for Abbott Laboratories Inc.*