1                    UNITED STATES OF AMERICA
                   SOUTHERN DISTRICT OF ILLINOIS
2

3    RHEALYN ALEXANDER, et al.,    )
                                   )
4                   Plaintiffs,    )
     v.                            ) No. 12-cv-52-NJR-SCW
5                                  )
     ABBOTT LABORATORIES, INC.,    ) East St. Louis, Illinois
6                                  )
                    Defendant.     )
7

8

9
                 TRANSCRIPT OF STATUS CONFERENCE
10

11        BEFORE THE HONORABLE NANCY J. ROSENSTENGEL
                 UNITED STATES DISTRICT JUDGE
12

13                      June 30, 2014

14

15

16

17

18

19

20

21   REPORTED BY:        Christine A. Dohack, RMR, CRR,
                         Official Court Reporter
22                       301 West Main Street
                         Benton, Illinois  62812
23                       (618) 439-7725
                         Christine_Dohack@ilsd.uscourts.gov
24
     Proceedings recorded by mechanical stenography, produced
25   by computer-aided transcription.

1

    APPEARANCES:

2

    FOR PLAINTIFFS:        Janet G. Abaray, Esq.
3                          BURG SIMPSON ELDREDGE HERSH JARDINE PC
                           312 Walnut Street, Suite 2090
4                          Cincinnati, OH  45202
                           (513) 852-5600
5                          jabaray@burgsimpson.com

6                          Christopher F. Cueto, Esq.
                           LAW OFFICE OF CHRISTOPHER CUETO, LTD
7                          7110 West Main Street
                           Belleville, IL  62223
8                          (618) 277-1554
                           ccueto@cuetolaw.com

9
                           John Eddie Williams, Jr., Esq.
10                         John T. Boundas, Esq.
                           Margot G. Trevino, Esq.
11                         WILLIAMS KHERKHER HART BOUNDAS, LLP
                           8441 Gulf Freeway, Suite 600
12                         Houston, TX  77017
                           (713) 230-2330
13                         jwilliams@williamskherkher.com
                           jboundas@williamskherkher.com
14                         mtrevino@williamskherkher.com

15                         Heath A. Novosad, Esq.
                           Blair R. Loocke, Esq. (via telephone)
16                         Nancy R. McEvily, Esq.
                           BRACEWELL & GIULIANI LLP
17                         7111 Louisiana, Suite 2300
                           Houston, TX  77002
18                         (713) 221-1258
                           Heath.Novosad@bgllp.com
19                         Blair.Loocke@bgllp.com
                           Nancy.Mcevily@bgllp.com
20
                           Jennifer Salim Richards, Esq.
21                              (Via telephone)
                           BRACEWELL & GIULIANI LLP
22                         1445 Ross Avenue, Suite 3800
                           Dallas, TX 75205
23                         (214) 758-1629
                           Jennifer.Salim@bgllp.com

24

25

```
 1
                    Kenneth Tommy Fibich, Esq.
 2                  FIBICH HAMPTON LEEBRON
                         BRIGGS & JOSEPHSON, LLP
 3                  1150 Bissonnet
                    Houston, TX  77005
 4                  (713) 751-0025
                    tfibich@fhl-law.com
 5
                    Joshua C. Ezrin, Esq.  (via telephone)
 6                  AUDET & PARTNERS LLP
                    221 Main Street, Suite 1460
 7                  San Francisco, CA  94105
                    (415) 568-2555
 8                  jezrin@audetlaw.com

 9                  William T. Dowd, Esq.  (via telephone)
                    Laura Lumaghi, Esq.  (via telephone)
10                  DOWD & DOWD
                    211 N. Broadway, Suite 4050
11                  St. Louis, MO  63102
                    (314) 621-2500
12                  bdowd@dowdlaw.net
                    llumaghi@dowdlaw.net
13
                    John J. Driscoll, Esq.
14                  Christopher J. Quinn, Esq.
                    DRISCOLL FIRM, P.C.
15                  211 N. Broadway, Suite 2440
                    St. Louis, MO  63102
16                  (314) 932-3232
                    john@thedriscollfirm.com
17                  chris@thedriscollfirm.com

18                  Sarah Shoemake Doles, Esq.
                    CAREY DANIS & LOWE
19                  8235 Forsyth Blvd.
                    St. Louis, MO  63105
20                  (800) 721-2519
                    sdoles@careydanis.com
21
                    Pamela A. Borgess, Esq.
22                  James D. O'Brien, Jr., Esq.
                    ZOLL, KRANZ & BORGESS, LLC
23                  6620 W. Central Avenue, Suite 100
                    Toledo, OH  43617
24                  (419) 841-9623

25
```

```
1
      FOR DEFENDANT:        Paul F. Strain, Esq.
2                           Michael B. MacWilliams, Esq.
                            Dino S. Sangiamo, Esq.
3                           VENABLE LLP
                            750 East Pratt Street, Suite 900
4                           Baltimore, MD 21202
                            (410) 244-7717
5                           pfstrain@venable.com
                            mbmacwilliams@venable.com
6                           dssangiamo@venable.com

7                           Dan H. Ball, Esq.
                            BRYAN CAVE, LLP
8                           One Metropolitan Square
                            211 N. Broadway, Suite 3600
9                           St. Louis, MO  63102
                            (314) 259-2000
10                          dhball@bryancave.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          (Proceedings began in open court at 2:12 p.m.)

2          THE CLERK:  The matter of *Alexander versus Abbott*

3  *Laboratories, Inc.*, Case No. 12-CV-52, is called for a

4  status conference.

5          We're going to try and take everyone's name for

6  the record, if you'll just -- we'll start at this table

7  here.

8          MR. STRAIN:  Thank you very much.  This is Paul

9  Strain, one of the counsel for the defense.

10          MR. SANGIAMO:  Dino Sangiamo for the defense.

11          MR. MacWILLIAMS:  Michael MacWilliams for Abbott.

12          MR. BALL:  Dan Ball for Abbott.

13          MS. ABARAY:  Janet Abaray for plaintiffs.

14          MR. BOUNDAS:  John Boundas for plaintiffs.

15          MR. CUETO:  Christopher Cueto for the plaintiffs.

16          MR. NOVOSAD:  Heath Novosad for the plaintiffs.

17          MR. WILLIAMS:  John Eddie Williams, plaintiffs.

18          MR. FIBICH:  Good afternoon, Your Honor.  Tommy

19  Fibich for the plaintiffs.

20          MS. DOLES:  Sarah Shoemake Doles for the

21  plaintiffs.

22          MS. LOOCKE:  Blair Loocke for the plaintiffs.

23          MS. TREVINO:  Margot Trevino for the plaintiffs.

24          MR. DRISCOLL:  John Driscoll for plaintiffs, Your

25  Honor.

```
 1          MR. O'BRIEN:  Jim O'Brien for the plaintiffs.

 2          MS. BORGESS:  Good afternoon, Your Honor.  Pamela

 3   Borgess for the plaintiffs.

 4          MR. QUINN:  Chris Quinn for the plaintiffs, Your

 5   Honor.

 6          MS. McEVILY:  Nancy McEvily for the plaintiffs.

 7          THE COURT:  Thank you.  And I understand we have

 8   some on the phone, as well?

 9          MR. DOWD:  Bill Dowd and Laura Lumaghi from Dowd

10   and Dowd for the consolidated plaintiffs.

11          MR. EZRIN:  Good afternoon, Your Honor.  Joshua

12   Ezrin from Audet Partners in San Francisco on behalf of

13   consolidated plaintiffs.

14          THE COURT:  Anyone else?

15          MS. RICHARDS:  Hi.  This is Jennifer Salim

16   Richards, also here on behalf of the consolidated

17   plaintiffs, of Bracewell and Giuliani.

18          THE COURT:  Okay.  Well, thank you.  Good

19   afternoon, everyone.  And I'm not ever going to remember

20   everyone's name, I know that, so I apologize for that.

21          I also, you know, I have had a chance to look at

22   this case and I know it's been bounced around from Judge

23   Murphy to Judge Herndon to me.  So, you know, to the

24   extent I can, I apologize that the Court's been going

25   through this, these many transitions.  But I have it, I'm
```

1    here for a long time, and we're going to get it on the

2    track and out of the station.  So, I appreciate everyone

3    being here today.

4         First, there were just a couple housekeeping

5    matters I wanted to take up.  It looks like a number of

6    the cases have been consolidated entirely; some have been

7    consolidated for discovery only; and then there's a

8    handful of cases that have not been consolidated.

9         Are all of the cases, I mean, the parties here

10   today, do you represent all of those cases or is there a

11   need that we consolidate some more?  Or does anyone -- can

12   the plaintiff, anyone on the plaintiff speak to that, as

13   to whether we need to consolidate the remaining cases or

14   if everyone's getting notice of matters sufficiently?

15        MR. FIBICH:  Thank you, Your Honor.  Once again,

16   for the court reporter and you, my name is Tommy Fibich.

17        The majority of the consolidated cases are being

18   handled by the majority of the people at this table.  And

19   I don't know that we resist additional cases being

20   consolidated because we don't know what those cases are.

21        We have functioned as an ad hoc steering committee

22   working together and collaboratively, efficiently, with

23   respect to the consolidated cases that are now

24   consolidated.  If there are additional cases that would

25   benefit the Court by consolidation for notice purposes and

1    that sort of thing, then we certainly wouldn't object to

2    that.

3           But right now, I don't know -- this is the first

4    I've heard of individual cases that are now docketed

5    before you.

6           THE COURT:  Okay.  We may need to look into that.

7    But that's my concern is just that everybody who needs

8    notice is getting notices.

9           Do the defendants have anything to offer on that?

10          MR. STRAIN:  Good afternoon.  Again, Paul Strain

11   for the defense.

12          We think it's a good idea to have all cases

13   consolidated for discovery and notice, Your Honor.  And we

14   would certainly have no objection to that.  We think it

15   would serve the Court and the parties to do so.

16          THE COURT:  Okay.  All right.  Well, I'll take a

17   look at that further.

18          The other thing I noticed when reviewing the

19   docket and preparing for today, there are a number of

20   sealed entries, documents that have been filed under seal,

21   and the Seventh Circuit does not look upon this kindly, at

22   all.  Can anyone explain to me why things have been -- are

23   being filed under seal?

24          MR. BALL:  Well, I -- excuse me.  Dan Ball for the

25   defense.

1          I know one of the reasons that they have been
2     filed under seal is if there is any reference to any
3     medical or health condition of any of the individual
4     plaintiffs, that is one of the chief reasons that they
5     have been filed under seal from our standpoint.  There
6     also may be occasions where some of the documents that
7     have been marked confidential have been filed under seal.
8     But I think the principle reason from our standpoint has
9     been the medical information.
10         THE COURT:  And you're fine to stay where you are,
11    I'll just say as long as I can hear you and the court
12    reporter can hear you.  I don't want you to keep coming up
13    to the podium.
14         MS. ABARAY:  Janet Abaray, Your Honor.
15         A couple things.  My impression was that most of
16    the documents that are filed under seal are because they
17    have been designated as confidential or parts of the
18    deposition testimony have been designated as confidential.
19         And this is an issue that we started to touch on
20    about four or five months ago and never really put it, you
21    know, on the table and got it grappled with.  But
22    plaintiffs are of the opinion that their confidentiality
23    was being overdesignated.  And we actually discussed that
24    at one hearing with Judge Williams, and I believe Judge
25    Herndon looked at it briefly, but we never got to the

1    point of getting it ruled on and really good and sorted

2    through.

3         I have raised the issue in a few of the

4    depositions, that the protective order has a procedure

5    that we're to notify the defendants if we think they have

6    overdesignated and then they're supposed to get back with

7    us.  And I have been able to narrow down some designations

8    of depositions, but that's an issue that I think really

9    needs to be looked at.

10        THE COURT:  Yeah, I just think we just need to be

11   careful because the Seventh Circuit does not look kindly

12   at all upon things being filed under seal, just find a way

13   to keep it out of the record, redact a part of it, but

14   just to continue filing things under seal, so -- okay, I

15   will look into that further.

16        So then I just want to address the pending

17   motions.  I see the motion for sanctions is now fully

18   briefed as of about a week ago.  I will be looking at that

19   and I will set that for a separate hearing if I feel it's

20   necessary after I have reviewed all of the pleadings.

21        Before Judge Herndon transferred this case to me,

22   all of the other pending motions were termed, so there are

23   no motions related to the Bonner case pending.  I just

24   want to make that clear.  Those are no longer -- they were

25   just administratively termed.

1          And then there are two motions, one from

2    plaintiffs and one from defendant, for trial protocol or

3    bellwether plan.  And I'll reflect that those are granted

4    in part to the extent that we're going to resolve that

5    today.

6          Discovery issues.  I know Judge Williams was

7    heavily involved when the case was with Judge Murphy, and

8    then Judge Herndon took that over himself.  I am giving

9    those discovery issues back to Judge Williams.  So, to the

10   extent after today you have any discovery issues, I want

11   you to take those up with Judge Williams and I will be

12   close and in constant contact with him.

13         So, the next thing we need to talk about today is

14   the trial protocol, deadlines, and where we go from here.

15   I have reviewed all of the parties' submissions.

16         So first, I just have a question for the

17   plaintiffs:  Where are you -- whoever wants to speak to

18   this -- on producing all of the medical records for the

19   plaintiffs to defendants in this case?

20         MS. ABARAY:  Your Honor, I can respond on behalf

21   of the Burg Simpson plaintiffs.  We have provided to the

22   defendants a spreadsheet with approximately 100 cases,

23   that includes all the ones we have filed here plus several

24   unfiled, and given them background information, and we

25   have given them all the medical records that we currently

1    have on those cases.  That was as part of the mediation

2    process and also as it was relevant to the bellwether

3    process.  And that's an ongoing project that we're

4    involved in.

5          But we certainly don't have all of the medical

6    records on all of the cases because everyone's definition

7    of "all" can be quite different.

8          THE COURT:  Sure.  Okay.  Anyone else from the

9    plaintiffs want to speak on that?

10         MR. FIBICH:  Judge, let me also say that we had

11   this discussion a couple of months ago before Judge

12   Herndon.

13         Tommy Fibich, again, for the record.

14         And they had asked us for specific information on

15   cases, which I think we did give them.  It did not involve

16   voluminous medical records.

17         At this time, depending upon the Court's

18   predilection with respect to our trial selections, we are

19   prepared to give the Court whatever number of cases you

20   would like for us to develop for the purposes of trial

21   selections, and we can give them the medical records with

22   respect to those cases.

23         In anticipation of this hearing today, we have

24   gotten the majority of the Illinois cases, if that would

25   be a pool that the Court would be interested in looking

1    at, and we can give those medical records to them on a

2    number of those cases.

3            THE COURT:  Okay.  Yes, sir?

4            MR. STRAIN:  If I may, Your Honor.  This is Paul

5    Strain again for the defense.

6            What Tommy Fibich just referred to, the hearing

7    before Judge Herndon, that was the one back in January, on

8    January 15th, in which there was the discussion of

9    information that we would need.  Three months later, we

10   got a list that, with respect, was not at all informative.

11   Since then -- it just didn't provide us any medical

12   records and any information of value.

13           Since then, we have been told that the plaintiffs

14   themselves have, for the great majority of their cases,

15   they have the medical records.  And we have been asking

16   for basically two things:  What they have and blank

17   authorizations for the doctors, an identification of the

18   key doctors and blank authorizations for them.

19           We haven't reached agreement on that.  They don't

20   -- have not chosen to agree to that.  In order to, for the

21   overall benefit of the litigation for a value in a number

22   of ways, we really need all the medical records that they

23   have.  And they have said they have the great majority in

24   those blank authorizations.

25           And I think, to get things on track, just to -- or

1    out of the station, to adopt the metaphor of the Court's,

2    that's what we really need.

3         MR. FIBICH:  Your Honor, if it please the Court,

4    I'd like to address the issue because it's a bigger issue

5    than it may seem.

6         With all due respect, we are entering our fifth

7    year in this litigation.  This case has now been bounced

8    from Judge Murphy to Judge Herndon to yourself.  It has

9    been double dribbled through the appellate courts and

10   bounced from the state courts.

11        During this entire time, much has taken place:  My

12   hair was darker; Mr. Williams' hair was red; my hearing

13   was a lot better; through the natural productivity of our

14   children, Mr. Williams and I have had five grandchildren;

15   we are now due four more.

16        Meanwhile, our clients, these children, have

17   suffered.  Not one of them has had their day in court.

18   And these are lifelong birth defects.  These are not birth

19   defects that are fixed and somehow they go on about their

20   lives.  We need to get this train out of the station, to

21   use your metaphor.  And we cannot be bogged down into what

22   I sense is another delay tactic, where they'll come in and

23   say, we didn't get this, we didn't get that.

24        We can give them medical records with respect to a

25   pool of cases, get started on getting those cases set for

1    trial, developed, the experts deposed, and whatever needs

2    to be done to get cases for trial.  We can then give them

3    additional records as we go on.

4              But if we stay at this pace, you will not be here

5    long enough to end this litigation, which needs to be

6    done.

7              And it always gets down into the defendants,

8    wittingly or unwittingly, have done a wonderful job in

9    delaying this case.  And I could take a lot of time, and

10   anticipate I will, about problems we have.

11             But for today, we want to get a pool of cases.  We

12   respectfully ask this Court to determine what you believe

13   to be a protocol for moving this litigation along.

14             THE COURT:  Okay.  Thank you.

15             Yes, I agree, I don't want to get into a lot of

16   discussion because, as I said, I have read everything and

17   I already have in mind what I want to do because I am

18   going to be here for 20 years and I don't want to have ten

19   grandchildren by the time these cases are over.

20             So, I want the plaintiffs to identify 15 potential

21   cases that meet these criteria:  I want an Illinois case,

22   because I am familiar with that law and that's what I want

23   to try first; that was taken for an indication of

24   epilepsy; with date of birth 1998 to 2007; with multiple

25   injuries to the plaintiff.

1          So, that is because I see that as a broad section

2     of cases that will cover a large majority of the cases on

3     the Court's docket.

4          So my question to the plaintiffs:  With those

5     criteria, 15 cases meeting those criteria, how long will

6     it take you to get the defendants every medical record on

7     those 15 cases?

8          MR. BALL:  Is that all Illinois, Your Honor?

9          THE COURT:  All Illinois.

10          MR. FIBICH:  We can give them everything we have

11     next week.  There may be some that are a bit incomplete; a

12     lot of these go back a long ways, it's difficult getting

13     some records.  But for 15 Illinois plaintiffs, I think we

14     can get them all the medical records we possess for that

15     time period and give them a medical authorization to get

16     additional records.

17          THE COURT:  Okay.  So, you said within a week.

18     Today's the 30th.  By -- the end of next week?  July --

19          MR. FIBICH:  Yes, ma'am.

20          THE COURT:  July 11th?

21          MR. FIBICH:  Yes, ma'am.

22          THE COURT:  So, by July 11th, the plaintiffs will

23     provide a list of 15 cases that have an Illinois plaintiff

24     with the indication of epilepsy, date of birth 1998 to

25     2007, and with multiple injuries.

1          So, that will get us to July 11th.  One week from
2     then, so I'm going to say July 18th -- so, plaintiff, if
3     you can get it to the defendant sooner, do, get those
4     medical records to them.
5          By July 18th, I want the defendants to pick five
6     of those cases and rank them and tell me why each of those
7     cases would be your pick to try, and in that order.  And,
8     plaintiff, I want you to do the same.
9          But submit this to me ex parte, by e-mail, to my
10    proposed documents folder, which is
11    njrpd@ilsd.uscourts.gov.  You can get that from the
12    website, if you need it.
13         So, just to be clear, the defendants are going to
14    identify their top five.  Plaintiffs are going to identify
15    your top five.
16         MR. BALL:  In order, you said?
17         THE COURT:  In order.  With a brief description of
18    the case and why it's your -- why you think it would be
19    the best case to go to trial.
20         I only want to try one plaintiff at a time.  We're
21    going to pick one.  But I'm going to identify a runner-up,
22    so to speak, and a second runner-up, so to speak.
23         So, you're going to be doing fact-specific
24    discovery on three plaintiffs with one designated to go to
25    trial.  And if for any reason that plaintiff settles,

1    becomes ill, cannot for any reason go to trial, the next

2    one will be up.

3            MR. BALL:  And you'll give us the order, Your

4    Honor?  You will --

5            THE COURT:  Yes, I will.  After I look at those --

6    and I'll get that to you very quickly after I get your

7    submissions, which I want by, let's say, 5:00 on July 18.

8            So, I have looked at my calendar and I know,

9    again, that there's interest in getting this case tried.

10   If I could, I would do it by the end of the year, but it's

11   simply not possible because of what I inherited and what I

12   already have on the calendar.

13           So, I'm going to set the first case for trial on

14   February 17th, 2015.  We're going to pick a jury one week

15   before that, on February 10th.  Figure that way we'll have

16   plenty of time to pick a jury and give the jury the

17   heads-up that this is going to be a multiple-week trial.

18           And we'll hold the final pretrial conference on

19   February 9th.  And I will have Deana set that by separate

20   order as to the time, but February 9th for the final

21   pretrial conference.

22           So moving backwards, January 9th, I want motions

23   in limine and draft jury instructions.

24           And moving back from that, by December 1 of this

25   year, dispositive motions, including any *Daubert* motions.

1        So, this will all be in the minute entry from

2   today.

3        So the question then, for the parties, that I

4   haven't decided definitively, with those deadlines, with

5   dispositive motions due by December 1, I'll ask the

6   plaintiffs, first, what is a reasonable deadline for, to

7   end all discovery?  And again, we're just talking about

8   fact discovery on three cases with one of them going to

9   trial and only would we move to the others if something

10  happens to that one.

11       MR. BALL:  But we would be working up all three of

12  them at the same time?

13       THE COURT:  All three, yes.

14       MR. FIBICH:  Your Honor, I would suggest that we

15  kind of perhaps propose something to you because with

16  these cases being developed there will be potentially

17  additional experts.  Expert discovery may be needed for an

18  additional time period.  But typically, you know, I would

19  think 15 days before dispositive motions would be a good

20  time to end discovery.

21       THE COURT:  So mid-November?

22       MR. FIBICH:  Yes, ma'am.  Something like that.

23  But I'm a little concerned.  If we've gotten your picks by

24  August 1st, that only gives us two and a half months to

25  develop three cases with additional experts.  So, I'm a

1    little concerned about that.

2          THE COURT:   Okay.  Well, why don't we do this.

3    Let's just plan on that trial date and those deadlines

4    that I have set, so far.  And then, once we have the three

5    cases identified, we might all be in a better position to

6    see how much more discovery is, is needed.  And that's

7    something you can take up with Judge Williams.

8          MR. BALL:   Would be the deadlines?  Would mean we

9    would take those up with Judge Williams?

10         THE COURT:   Well, just the end of discovery and

11   disclosure of experts.  But let's just see where we are

12   whenever the three are identified.

13         MR. STRAIN:   Your Honor, if I may.  Paul Strain

14   again, for the defense.

15         I understand what the Court has directed and we'll

16   certainly work with that.  I wonder if I may just move

17   back one step, and that is to the picking of the 15 cases.

18   Your Honor has read all the briefing and you know the

19   defense feeling that, for them to choose the initial group

20   from which the smaller group is chosen, unfairly -- choose

21   your description -- unfairly advantages the plaintiff.

22         It would be -- and we would ask one of two things,

23   which would not alter the dates at all.  With what the

24   plaintiffs did provide on April 14th pursuant to what, the

25   discussion with Judge Herndon back in January, which is

1    Exhibit A to their May 14th trial protocol procedure which
2    the Court has seen, that has all the information necessary
3    for the Court to make that selection, it just sets out --
4    if I -- may I pass something up, Your Honor, for
5    convenience?
6              THE COURT:  Sure.
7              MR. STRAIN:  I just have the first page, Tommy.
8              The first page of that Exhibit A, just to save us
9    all from looking through the -- for that -- one of the
10   plaintiff's submissions, you'll see that that does, Your
11   Honor, set out the year, the applicable state law, and
12   whether it's multiple injury or not, and the reason for
13   the Depakote prescription.  So, it sets out those four
14   things the Court specified.
15             I don't like to burden the Court or your staff,
16   but you could easily identify the 15 and then certainly
17   nobody would have any reasonable complaint that the person
18   who selected the 15 had special knowledge.  Or, Your Honor
19   could specify that the 15 Illinois, for example, were the
20   first 15 Illinois listed.
21             Either one of those things would mean that the
22   plaintiffs could not pick and choose which 15 they wanted
23   to be the outer group of contenders.  I'd just ask, if you
24   would, to consider one of those two or perhaps some better
25   alternative.

1      THE COURT:  Okay.  What do the plaintiffs have to

2  say about that?

3      MR. WILLIAMS:  If I may, Your Honor.  John Eddie

4  Williams.

5      There's a lot of logic to letting the plaintiffs

6  decide and select because ultimately we're going to have

7  to resolve and dispose of 100 percent of all these cases;

8  correct?  So we can -- we have probably superior knowledge

9  about which ones make sense.

10      And, there's a lot of logic to the fact that the

11  people who are injured the worst deserve perhaps to move

12  to the front of the line to have their cases resolved.  It

13  will give us a lot of guidance because as we all know that

14  Judge Herndon appointed mediators.  And by trying the most

15  important cases, that will give us the best guidance as to

16  what we should do.

17      And so there's a lot of logic to letting us take

18  the first shot at deciding which of those cases will give

19  us the best picture that will move those toward overall

20  resolution.  Makes a lot of sense and I'd urge the Court

21  to let us do that.

22      THE COURT:  Well, I agree with Mr. Williams.

23  Because I think we learned -- I know Judge Murphy picked

24  the first three cases by random pick and that turned out

25  to not work so well as far as getting the cases moved

1      towards resolution.

2           They know the cases.  This is their -- you know,

3      if they're going to pick one that, you know, like I said,

4      there's been such delay, let's let them pick.  It's 15.

5      That's a big group.  You're still going to get to have

6      your say amongst those 15.

7           But I want to do whatever moves the entire

8      litigation forward.  And by picking one case, if I

9      randomly pick them or we kind of do what Judge Murphy did

10     and draw them out of a hat, that's not necessarily going

11     to advance the litigation as a whole if we get another

12     case that is kind of an outlier and isn't representative

13     of what the cases might really be worth.  If they take

14     their best swing and lose, they've taken their best swing.

15     So, I want to do whatever we can to get these cases moving

16     as a whole.

17          So, is there anything else we need to take up

18     today without rehashing all of this about the trial

19     protocol?

20          MR. FIBICH:  Your Honor?  Yes, I think there are

21     several things, if I may address the Court on those.

22          First of all, we'd like some additional trial

23     dates in 2015.  I don't think three cases is going to

24     really move the ball very much, respectfully.

25          I recognize the present matters that you inherited

1     when you took this bench.  I know that this is an active

2     court and that it was vacant for a period of time, and I

3     don't mean to be insensitive to the other matters that are

4     important matters before you.

5          But again, respectfully, we have been in this

6     litigation going on the start of our fifth year.  And

7     three cases are going to help a little bit but, quite

8     frankly, I think that's exactly what the defendant wants.

9     I think they want to try two to three cases a year and

10    drag this out.  They've got all the money in the world at

11    it.  They've got all the resources in the world.  And

12    they've got the ability to fight a 10-year war.

13         And we have individual children that have been

14    injured.

15         So I would request if not today, soon, you give us

16    additional backup matters that, where we can get ready and

17    try other cases.  We're not -- we may be out-manned but

18    we're, we're not going to be outworked on getting cases

19    ready.  So, if there's additional dates that you can give

20    us in the following year so that we don't come up in

21    January, get a case tried, and then start looking at

22    another six or nine months, it would be very much

23    appreciated by the plaintiffs.

24         The second thing that I'd like to address with the

25    Court is that with respect to in the past we have had

1    regular status conferences, about once a month, and I

2    still think that those are a good idea.  You have

3    indicated that you're going to drive this train and I

4    think it's appropriate for us to keep you advised on how

5    we're doing, what the problems are, and I think I speak

6    for both parties with respect to needing your involvement

7    in this case.

8            Thirdly, I'd like to talk to you a little bit

9    about Judge Williams.  And we have enjoyed being before

10   Judge Williams.  We have a tremendous amount of respect

11   for Judge Williams.  He's done a very good job on the

12   matters that we have had before him.  But there's a rocky

13   road ahead.  There's going to be some serious motions

14   brought against Abbott for their conduct.  And with

15   respect to orders that Judge Williams has already

16   rendered, we would -- that we feel have been violated,

17   maliciously, contumaciously, intentionally violated, we

18   would like to bring those matters to you.

19           I think it has the effect of making these

20   discovery orders come out exactly as they should, and it

21   has the further benefit of keeping you advised as to, in

22   the learning curve, helping you with your learning curve,

23   although I know you have been involved in this before you

24   took the bench and that you have read many of the things

25   that are here.

1    This is complex litigation.  There is a lot of

2    plaintiffs.  And I think the more that this Court can do

3    to stay involved -- and I'm not talking about the ordinary

4    discovery motions.  I'm not talking about setting a

5    deadline for experts or dealing with things.  But where we

6    have got court orders from Judge Williams and we feel

7    those have been violated, I'd request the opportunity to

8    present those violations to this Court.

9        THE COURT:  Are you talking about things other

10   than what's in the pending motion for sanctions?

11       MR. FIBICH:  Yes, ma'am.

12       THE COURT:  Well, like I said, I am going to take

13   up that.  That's my next order of business.  And if we

14   need to get you all back in here, I will, for a hearing on

15   that.  And then any other such motions, I will consider.

16   I do want to stay very involved.  It's just the day-to-day

17   discovery disputes, I want Judge Williams to handle.  But

18   I will be in touch with him constantly.

19       Is there anything else?

20       MR. STRAIN:  Yes, Your Honor.  If I may respond to

21   one or two of those and I have an additional suggestion --

22       THE COURT:  Sure.

23       MR. STRAIN:  -- for the Court to consider.

24       I think the idea of regular status conference is a

25   good one.  We endorse it.  We think the more the Court is

1    involved, the more you will see that now two accusations

2    already that we have been dragging our feet and trying to

3    drag things out, that's not true.  Any look at the record

4    will show that's not true.

5         Any look at the record among other things, this

6    many years into the litigation, we still only have

7    information on two of their 547 cases despite our repeated

8    requests.

9         And from the time they filed 547 cases in St.

10   Clair and Madison County, thereabouts, and Cook County,

11   most of whom had no connection to that county at all and

12   the courts then got involved, we have never tried to drag

13   it out.  That's not our goal.  And I think Your Honor will

14   see with regular status conferences that's not going to be

15   our goal in any way.  So, we endorse that idea.

16        Similarly -- was I interrupting Your Honor?

17        THE COURT:  No.  Go ahead.

18        MR. STRAIN:  Similarly, if the Court chooses to

19   set other trial dates in 2015, you'll find us altering our

20   schedules in every way we can to accommodate whatever the

21   Court directs.

22        On the issue of Judge Williams' orders.  Judge

23   Williams was in charge of discovery, had two, every two or

24   three week discovery conferences for, I believe it was,

25   about 14 -- 13 or 14 months.  We never heard such a

1   complaint that anybody should go over Judge Williams' head

2   on any of his orders.  But I think, I think Judge Williams

3   is more than able to determine whether something needs to

4   be shifted from him to the Court.  Obviously, it's your

5   prerogative and I don't -- I know no criticism of Judge

6   Williams was intended, and certainly none would have been

7   merited.

8          And finally, Your Honor, and this is not a

9   response, it's just something else I think the Court may

10  wish to consider, and we'd suggest the Court consider.

11         You're going to be driving the train and you want

12  to do so in a very informed way.  And there are issues of

13  science and medicine here that are important.  They're

14  interesting but they're also important.  What some courts

15  have done at the outset of multi-plaintiff pharmaceutical

16  litigation is convene a science day in which both sides

17  are invited to make a presentation; to bring in an expert,

18  off the record, no transcript, nobody's trying to gain

19  trial advantage by any of this, but to discuss with the

20  Court some of the key medical and scientific issues, for

21  whatever time the Court prescribes, two hours, half day,

22  full day.  And then for the Court, and this would be the

23  heart of it, to ask questions of the representative, the

24  medical doctor for the plaintiff, the medical doctor for

25  the defense, and for the Court to satisfy yourself that

1    you have the best grounding that you want at the outset of

2    the litigation in a way that is unfiltered by lawyer

3    advocacy.

4          We can give more particulars on that, what's been

5    done in other cases, should the Court request it.

6          But if the Court has an interest in that, we will

7    give a more detailed proposal on that, Your Honor.

8          THE COURT:  Okay.

9          MR. STRAIN:  I think it's something many judges

10   have found worthwhile.

11         THE COURT:  Thank you.

12         MR. STRAIN:  You're welcome.

13         THE COURT:  And let me just say as far as, you

14   know, I haven't studied the motion for sanctions.  As I

15   said, I will, and I'll get you back for a hearing if we

16   need to.  But as far as also with the plaintiffs picking

17   the 15 cases, I just have concerns that if we go through a

18   lot of, you know, discovery on every case and back and

19   forth and getting the records, we could spend the next

20   year trying to decide what to try.  And that's what I want

21   to avoid.

22         So, I think we just need to right off the bat

23   narrow it down to 15, narrow it to five, to three, and

24   we'll know where we are.

25         As far as other dates, I will be looking at that.

1    And if after this February trial, if we have to just start

2    setting one after another, we will.  We'll do whatever it

3    takes.  I am not going to have a Depakote case on my

4    docket when I retire in 19 years.  So, we're going to do

5    whatever we have to.  We'll get you some more dates.  You

6    know, we'll make it work.  I mean, we're busy but cases go

7    away every day and there will be a way we'll get these

8    set.

9           But let's get going on the, the identifying which

10   three we're going to do discovery on, and in getting those

11   ready for a trial in February, and then we'll go from

12   there.

13          Did you have something else, Mr. Williams?

14          MR. WILLIAMS:  Yes, Your Honor, if I may.

15          I'm only asking that, perhaps begging, that you

16   keep an open mind when we do go to trial, if we got three

17   cases ready it would, it would extend the trial

18   approximately a day and a half per plaintiff.  So, if we

19   added two additional plaintiffs, it might extend the trial

20   by up to three days, which I think would go a long ways

21   toward judicial economy and efficiency.  So, I'm planting

22   that seed and I may come back and ask you to reconsider in

23   the future.  So --

24          THE COURT:  You don't think it would be too

25   confusing for the jury to have three plaintiffs?

1          MR. WILLIAMS:  No, ma'am.  If I may?  If I may

2    share my experience?  I had, one time I tried 282

3    plaintiffs, asbestos clients, individual plaintiffs, in a

4    three-month trial.  And we all had notebooks and kept

5    track of it, and pictures and stuff.

6          And during that, in my numerous years, tried lots

7    of cases with five and ten plaintiffs at a time.  And if

8    you give a jury a notebook and they have a picture and

9    they have a list of the witnesses and stuff that they can

10   keep, if the Court were to allow them to take notes and

11   stuff, it is actually very interesting and very surprising

12   that people can clearly tell the, you know, keep the facts

13   straight about the three.

14         So, I'm going to perhaps, unless you just tell me,

15   "shut up," but if you'll allow me, I may bring that up

16   again in the future.

17         THE COURT:  Okay.  I appreciate that.  I -- what

18   -- what's the defendant's position on that?

19         MR. STRAIN:  Your Honor, we find ourselves in

20   complete agreement with the plaintiffs, but not with Mr.

21   Williams as he spoke now.  We found ourselves in complete

22   agreement with what the plaintiffs said in writing to the

23   Seventh Circuit which we set forth in our most recent

24   filing, and they listed all the reasons why a joint trial

25   of plaintiffs in these personal injury cases would be

1    impractical and unfair and confusing.

2         Judge Murphy made a similar finding in a much more

3    succinct way on March 12th of 2013 when he said, no, these

4    cases should be tried individually, and he listed quickly

5    one of the defects if they were tried together.

6         And we can pass that up, if the Court would be

7    interested in that transcript.  That's how we got into

8    the, initially into, we're trying one at a time.  Judge

9    Murphy said, no, we're trying one at a time.  That's the

10   fair way to do it.

11        And of course then the plaintiffs in the briefing

12   I refer to, in their briefing to the Seventh Circuit, as

13   we quoted in our recent filing, they listed more

14   eloquently than I can the reasons why a joint trial would

15   be unfair and fraught with potential for error.

16        And I just, I need to disagree for a moment and

17   very bluntly with my friend Mr. Williams.  To say that

18   each additional plaintiff would extend the trial in, by

19   one and a half days, I'm afraid that is grossly wrong.  In

20   the Bonner case -- and I'm just trying to do it in my head

21   and I don't have a list -- there must have been ten

22   individual witnesses in that case on the specific issues,

23   not the general issues, on the specific issues, half

24   experts and half not experts.  I may be low on that, there

25   may be more like six or seven case-specific experts.

```
 1              It would be ambitious if you allocated less than
 2      one week for each additional plaintiff tried in any
 3      multi-plaintiff case.
 4              And I think that's one of the reasons why there is
 5      virtually no precedent, no precedent for a judge doing it,
 6      to my knowledge, in the first bellwether tried, trying two
 7      at once.  Judges, in my experience, always want to try the
 8      first one as one.  And almost invariably in pharmaceutical
 9      cases, the cases are tried individually.  There have been
10      exceptions, but they have been rare and there are good
11      reasons for that.
12              So, when the Court extends Mr. Williams the
13      courtesy of raising that again, as I know you will, I know
14      you'll extend us the courtesy of explaining why we think
15      the courts that have rejected that are so right.
16              THE COURT:  Absolutely.  I'll keep my mind on
17      that.  It just seems easier doing the first one being one
18      plaintiff.
19              MR. STRAIN:  Thank you, Your Honor.
20              THE COURT:  You're welcome.  Anything else?
21              MR. BALL:  Could I ask one question, just
22      logistical to get it right?
23              THE COURT:  Sure.
24              MR. BALL:  You're going to give us your selection
25      of cases in order.  Should the parties then, among
```

1    themselves, try to come up with a fact discovery expert
2    schedule that works within these deadlines?  Is that what
3    you're asking?
4            THE COURT:  Yes, that would be helpful if you can
5    agree to it.
6            MR. BALL:  And then if we can't, we have Judge
7    Williams.  We kind of give dueling proposals to Judge
8    Williams and he decides?
9            THE COURT:  Yes.  Right.  Because you have a lot
10   of dates.  I mean, normally, in a normal case we just say,
11   here's your trial date and go, work backwards.
12           MR. BALL:  Right.  Okay, I understand.  Thank you.
13           MR. WILLIAMS:  Your Honor, should we wait to hear
14   from Judge Williams?  Because there are a lot of things
15   that we need to get moving on.  Or should we --
16           THE COURT:  Go ahead and contact him.  File a
17   motion.  And you know, that's another thing I want to say.
18   I mean, there is a proper procedure if Judge Williams
19   enters an order you want brought to my attention.  Now, I
20   am not encouraging you to file an appeal on every order
21   that is filed.  I mean, he's very experienced,
22   knowledgeable, and can handle these discovery matters.
23           If there's something that you think particularly
24   needs my attention then an appeal from his order or a
25   motion for sanctions is the proper way to bring it to my

1    attention.  So, get with him on that.

2          And then I do agree regular status conferences

3    would be helpful.  So after -- well, let me look at the

4    calendar after this and we'll get something set for about

5    a month after we decide what the three cases are, and

6    we'll get everybody back and see where we are.

7          Does anyone who is on the telephone have anything

8    they wish to say?

9          (Pause.)

10         MR. FIBICH:  Your Honor, if I may make a final

11   comment before we break?

12         THE COURT:  Sure.

13         MR. FIBICH:  First of all, welcome to the fray.

14         THE COURT:  Thank you.

15         MR. FIBICH:  We are not writing a book on federal

16   judges in the Southern District we have met in the

17   Depakote litigation.  But the one thing that I am certain

18   of, we can see the future because it's been changing so

19   fast, it's, it's unbelievable with technology.  The one

20   thing that I can predict with 100 percent accuracy is

21   that, if you're near 19 years, and the Depakote litigation

22   is still going on, somebody from that side's going to be

23   objecting to what we want to move this case forward.  And

24   multiple trials is just one of them.  And I say that with

25   a smile to these guys who are my friends and who I admire

1    for the job they have done so far.

2         But we are going to be like a broken record, I'm

3    afraid.  And if it, at some point in time we have

4    irritated you with our urgency to try to help these

5    children get their day in court then, please, let us know

6    and we'll quit raising that as an issue.

7         Thank you.

8         THE COURT:  I appreciate that.  Let's just work to

9    make sure we're not still here in 19 years.

10        MS. ABARAY:  Your Honor, if I could just add

11   something.  Janet Abaray for the plaintiffs.

12        Just -- the Court is probably aware of this but,

13   just in case you're not, there are some other cases

14   pending in federal courts around the country.  And we have

15   a few right now in front of Judge Dlott, and she's the

16   Chief Judge in the Southern District of Ohio.  And we also

17   have a few in Kentucky.  And she's indicated we should

18   probably get coordination so that that little grouping of

19   cases, which, the Kentucky court's about five minutes away

20   from the Cincinnati court.

21        But I just wanted you to be aware that there are

22   some other judges.  And a lot of these depositions have

23   been cross-noticed and a lot of the issues have been

24   tracking in more than one court.  And we're all trying to

25   coordinate our efforts and not impose on the judiciary but

1    I just wanted you to be aware of that.

2            THE COURT:  I appreciate that.  Are any of those

3    cases set for trial before February?

4            MS. ABARAY:  Not before February in my cases.

5            What about the California docket?

6            MR. WILLIAMS:  We do have one in California state

7    court, Your Honor.  And it was originally set in August

8    and now the court is trying to decide if it's going to be

9    October or November, I believe.

10            Is that right?

11            MR. BOUNDAS:  John Boundas, Your Honor.

12            We don't have an exact trial date.  The court is

13    going to try to slot us in when he has a three-week period

14    available sometime after November.

15            THE COURT:  Thank you.

16            MR. STRAIN:  Judge, yeah, I was just going to say,

17    to echo what John has said, we, we expect that California

18    case, it's in state court in San Francisco, to be ready

19    for trial by November.  The court has promised both sides

20    to give us the earliest date that he can, when a slot

21    opens up on his schedule.

22            The first date we have right now from California

23    for a trial is the case in the Southern District of Ohio

24    on June 8th.  There is a case on the court's docket, I

25    think it's still there -- one of your cases, Janet --

1    Harrison, that is listed, if memory serves me, on May 1st.

2    I don't think it was an intentional setting but it's one

3    of those logistical things we have to take care of.

4         MS. ABARAY:  Your Honor, when we first filed our

5    cases in the Southern District of Illinois, they weren't

6    consolidated right away and they got sort of, I think

7    maybe the clerk's office put a trial date out.  So, some

8    of our early cases had a May and June trial date in the

9    Southern District of Illinois.  I think they're all

10   consolidated.

11        I did want to bring that up because you mentioned

12   consolidated for discovery only.  I think what happened

13   was, there was already a trial set and a consent to trial

14   to the magistrate by the time our cases got filed and

15   discovery was close to being cut off.  So we didn't, we

16   didn't quite know what to do, to tell you the truth.

17        And so I think Judge Herndon clarified that it was

18   consolidated under Rule 42, but that we weren't part of

19   the case going to trial in front of Judge Williams because

20   that was just one case that was set for trial.

21        So, right now I think everything's probably just

22   consolidated under Rule 42.  I don't know that there's a

23   distinction --

24        THE COURT:  Okay.

25        MS. ABARAY:  -- between consolidated for discovery

1    or not.

2         THE COURT:  Well, I noticed that.  There are some

3    random dates out there.  So we'll, we'll take a look at

4    those and clean that up, but with the idea that it's just

5    going to be these three that we're getting ready for

6    February.

7         MR. STRAIN:  And assuming that is off the books,

8    as I think everyone intends and will be, then we hope to

9    get a trial in San Francisco sometime soon after November,

10   if the Court's schedule permits.

11        Then, and I overlooked this a moment ago, we have

12   a trial in state court in St. Louis on May 20th.  And then

13   we have trials.  The next trial we'd have would be

14   Southern District of Ohio in June.

15        But, unless we are fortunate enough to get the

16   trial in San Francisco state court before February, your

17   case would be the first to be tried.

18        THE COURT:  Okay.  And then backtracking on that,

19   then let me ask the plaintiffs, if we, assuming we go one

20   plaintiff and maybe we need to wait, in the fall, once we

21   know what that is, I want you to tell me -- why don't we

22   do this.  Why don't I just add to what you're going to

23   send me for both sides with the five, tell me how many

24   days you think it would take to try that one plaintiff.

25   So that both -- for planning purposes, I have an idea.

```
1          MR. BALL:  For each of the five cases?

2          THE COURT:  For each of the five, tell me, are

3     they all about the same?  You know, do you think they'd

4     all take about the same?  Or is there maybe one plaintiff

5     that for some reason you think would take longer than

6     another.  Is that possible for you to do?

7          MR. WILLIAMS:  Absolutely.  And I can do it right

8     now.  We answered this question for Judge Williams because

9     he asked that.  I think both sides, we can do it in about,

10    including voir dire and closing, 15 trial days is my best

11    estimate.  And that's what I believe we told Judge

12    Williams, for one case.

13         THE COURT:  Does that sound reasonable to you?

14         MR. STRAIN:  That does sound reasonable to the

15    defense, Your Honor.

16         MR. WILLIAMS:  Your Honor, could we note that he

17    agreed me?

18         THE COURT:  I think that's the first time today.

19         MR. STRAIN:  Actually, I agreed with his pleading

20    earlier, where he said multiple plaintiff trials would be

21    unfair.

22         THE COURT:  Yes.  And just to give you an idea, I

23    plan, like I said, pick the jury a week before, so we'll

24    get that out of the way so, when we start the 17th.  And

25    then to -- we'll have trial Tuesday through Friday.  Off
```

```
 1   on Mondays, because I have other settings on Monday.  So,
 2   it would be every day, Tuesday through Friday, until we're
 3   done.  And I think, as of right now, I have time until the
 4   last week of March.  As long as we're done by March 27th,
 5   I think.  So, that gives us plenty of time with going four
 6   days a week.
 7          MS. ABARAY:  Your Honor, are you asking that we
 8   indicate how many additional days it would be to add the
 9   second and third and fourth case on to a trial plan?
10          THE COURT:  No.  Specifically, I was just asking
11   for each plaintiff.  Like, if you think one plaintiff will
12   take longer for some reason or another, just tell me each.
13   And if you want to put in there that, how much you think
14   it would add if, say, if we did two or three.  And the
15   same for the defense.
16          MS. ABARAY:  Thank you.
17          THE COURT:  Okay.  Anything else?  (Pause.)  All
18   right.  Thank you.  It was nice to meet everyone.  I'm
19   sure we'll be seeing a lot of each other.  Thanks for
20   coming in and have a great day.
21          (Court adjourned at 3:02 p.m.)
22
23
24
25
```

1        <u>REPORTER'S CERTIFICATE</u>

2            I, Christine A. Dohack, Registered Merit Reporter

3    and Certified Realtime Reporter in and for the United

4    States District Court for the Southern District of

5    Illinois, do hereby certify that I was present at and

6    reported in machine shorthand the proceedings in the

7    above-mentioned court; and that the foregoing transcript

8    is a true, correct, and complete transcript of the

9    electronic recording.

10           I further certify that I am not an attorney for,

11   nor employed by, nor related to any of the parties or

12   attorneys in this action, nor financially interested in

13   the action.

14           I further certify that this transcript contains

15   pages 1-42 and that this reporter takes no responsibility

16   for missing or damaged pages of this transcript when same

17   transcript is copied by any party other than this

18   reporter.

19           IN WITNESS WHEREOF, I have hereunto set my hand at

20   Benton, Illinois, this 1st day of July, 2014.

21

22                    *s/Christine A. Dohack, RMR, CRR*

23                    _____

24                    Christine A. Dohack, RMR, CRR

25