IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE DEPAKOTE: | ) |
| | ) |
| RHEALYN ALEXANDER, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 12-CV-52-NJR-SCW |
| | ) |
| ABBOTT LABORATORIES, INC., and ABBVIE, INC., | ) LEAD CONSOLIDATED CASE |
| | ) |
| Defendants. | ) |

APPLICABLE TO ALL CASES

## MEMORANDUM AND ORDER
## REQUESTING BRIEFING ON CHOICE-OF-LAW

**ROSENSTENGEL, District Judge:**

The parties have submitted to the Court charts outlining the following as to each case: (1) the relevant Depakote label; (2) the indication for the use of Depakote; (3) the alleged primary injury or primary injuries; and (4) the law allegedly applicable to the claims. (Docs. 469; 470). Plaintiffs' chart provides the Court with a list encompassing all of the states that may be relevant to a Plaintiff's claim, factoring in the state where the prescribing decision was made, the state where conception occurred, the state where gestation occurred, and the state where the birth occurred. Abbott also provides the Court with the state where the child was conceived and state of each plaintiff's current residence.

Federal courts sitting in diversity apply the choice-of-law principles of the forum state to determine which state's law governs the proceeding. *West Ben Mut. Ins. Co. v.*

*Arbor Homes LLC*, 703 F.3d 1092, 095 (7th Cir. 2013); *see also Midwest Grain Prods. of Ill., Inc. v. Productization, Inc.*, 228 F.3d 784, 787 (7th Cir. 2000). Illinois only requires a choice-of-law determination "when a difference in law will make a difference in the outcome." *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 898 (Ill. 2007). Illinois applies the "most significant relationship" test to choice-of-law disputes. *Westchester Fire Ins. Co. v. G. Heileman Brewing Co.*, 747 N.E.2d 955, 961 (Ill. 2001); *see also Ingersoll v. Klein*, 262 N.E.2d 593 (Ill. 1970) (adopting the "most significant relationship" test of Restatement (Second) of Conflict of Laws).

Four factors should guide the Court's decision— "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Restatement (Second) of Conflict of Laws § 145(2); *see Kamelgard v. Macura*, 585 F.3d 334, 341 (7th Cir. 2009); *Townsend*, 879 N.E.2d at 905-906. Illinois maintains a "strong presumption" that the substantive law of the place of injury governs unless "plaintiffs can demonstrate that [the place of injury] bears little relation to the occurrence and the parties." *Townsend*, 879 N.E.2d at 905.

Determining the actual "place of injury" is not always possible. S*ee Pittway Corp. v. Lockheed Aircraft Corp.*, 641 F.2d 524, 527 (7th Cir. 1981) (where the Court's holding was based in part on the indeterminable nature of the "place of injury" for cracks discovered in an airplane mainframe.); *see also Best Canvas Prod. & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 622 (11th Cir. 1983) ("Here, it is almost impossible to ascertain the

location of the [place of injury] because the water damage occurred during several interstate shipments over the course of six months."); *see also Baltimore Football Club, Inc. v. Lockheed Corp.*, 525 F. Supp. 1206, 1208 (N.D. Ga. 1981) ("The actual situs of the place of injury—i.e., [sic] the exact location of the airplane when the cracks occurred—is basically impossible to determine.") In each of the cited cases, the Courts were challenged with applying the injury location presumption to an injury that could have occurred in multiple states. The Courts did not utilize speculation or statistics to get a "close approximation" once it became clear that a definitive location could not be determined. Instead, they analyzed the remaining "most signification relationship" factors. *See e.g., Pittway Corp. v. Lockheed Aircraft Corp.*, 641 F.2d 524, 528 (7th Cir. 1981).

Here, for the cases where the conception and the entire gestation occurred within a single state, the "place of injury" is easy to determine, *i.e.*, there is no other state where the injury to the fetus could have occurred. For cases where the state of conception is unknown or where the mother left the state of conception prior to discovering the injury, however, similar to *Pittway*, the place of injury is potentially indeterminable. The evidence adduced during the first bellwether trial and through other filings in the Depakote litigation indicates that valproic acid ingested during the gestation period can have a variety of effects occurring at a variety times.

Interstate travel further frustrates the ability to determine a place of injury, even when the state of conception is "known." The claim of E.G. (parent Christina Raquel) Case No. 12-cv-55, provides a perfect example of the difficulty in determining place of injury. Ms. Raquel allegedly conceived E.G. in California, however, the primary window

for the development of spina bifida occurred in Alabama. Case No. 12-cv-52 (Doc. 469, at p. 6). The specific location where the injury first occurred might be California, Alabama, or any state in-between.

For the place of injury to be "known," and therefore entitled to the initial presumption under Illinois law, a plaintiff must have actual knowledge of the state where conception occurred and be able to certify that she did not leave the state until the injury was discovered. Such "book-ending" is required in these cases to avoid an arbitrary assignment of the place of injury to when the injury could have started or was actually discovered. *See Pittway Corp. v. Lockheed Aircraft Corp.*, 641 F.2d 524, 527–28 (7th Cir. 1981).

But determining the place of injury does not end the analysis. *Id.* at 526-7 ("The relative importance of all the alleged contacts, including the place of injury, must be independently evaluated on a case-by-case basis with respect to the particular issue involved, the character of the tort, and the relevant policies of the interested states.") It is undisputed that the Depakote litigation cases present common issues of fact between the claims. Some of the common facts germane to the choice-of-law analysis include: (1) that Depakote is manufactured in Illinois; (2) Illinois is where Abbott has made decisions about the development, testing, manufacturing, labeling, and marketing of Depakote; (3) Illinois is where Abbott's decisions about the FDA-approved labeling of Depakote have also occurred; and (4) virtually all documents regarding the development, testing, manufacturing, labeling, and marketing of Depakote are located in Illinois, where Abbott is headquartered. *See* Affidavit of Charles Santora, Case No. 12-cv-52 (Doc. No.

37-3, at p. 2-5). Indeed, the parties agree that "a substantial part of the events giving rise to Plaintiffs' claims occurred [in Illinois]." Defendants' Motion to Transfer Venue, Case No. 12-cv-52 (Doc. No. 37, at p. 8); Plaintiffs' Trial Brief, Case No. 13-cv-326 (Doc. 206, at p. 7). Nevertheless, in the Depakote cases where the place of injury is known and corresponds with the state where the relationship is centered, *i.e.*, the state where the mother was prescribed and ingested the drug, Illinois' substantial relationship is outweighed.

For cases where the place of injury is not known, the Court is strongly inclined to find that Illinois has the most significant relationship to Plaintiffs' claims. At their core, Plaintiffs' claims revolve around an alleged failure to warn based on inadequate labeling. The state where Depakote was purchased or the location where the drug was prescribed has a far more attenuated relationship to the core of the torts than the location where labeling, manufacturing, and marketing decisions were made.[1] Before making this determination, however, the Court invites the parties to submit briefing as to whether the Court should or should not take this approach.

The Court realizes that a majority of the cases will not involve any choice-of-law dispute, but directs the parties to list out and address the handful of cases that will involve such a dispute in their briefings. The briefing should also include:

1) A list of all cases where there is no dispute between the parties concerning which state's substantive law applies;

---

[1] Because Defendants are headquartered in Illinois, the third factor—the domicile, residence, nationality, place of incorporation and place of business of the parties—will likely always either be a neutral factor or bend in favor of Illinois. The exception to this would be the one possible Plaintiff in the Depakote litigation who resides in Delaware, the state of incorporation for Defendants. *See* Case No. 12-cv-52 (Doc. 282-1, at p. 2).

2) A list of all cases/states where the law concerning *liability* is substantially similar to Illinois; and

3) A list of all cases/states where the substantive law differs from Illinois. The parties should include the specific areas that are different with citations to the applicable statutes and controlling case law. Finally, the parties should address whether any of the differences in substantive law impact the jury's initial "adequacy of the label" determination.

The parties' briefs shall be due on or before **October 19, 2016**. Responses shall be due on or before **November 2, 2016**.

**IT IS SO ORDERED.**

DATED: September 28, 2016

_____
**NANCY J. ROSENSTENGEL
United States District Judge**