IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE DEPAKOTE: | ) |
| | ) |
| RHEALYN ALEXANDER, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 12-CV-52-NJR-SCW |
| | ) |
| ABBOTT LABORATORIES, INC., and | ) LEAD CONSOLIDATED CASE |
| ABBVIE, INC., | ) |
| | ) |
| Defendants. | ) |

**This Document Relates to: ALL CASES.**

# ORDER SETTING STATUS CONFERENCE

**ROSENSTENGEL, District Judge:**

A Status Conference will be conducted in Courtroom 3 at the East St. Louis courthouse on **November 17, 2016,** at **9:30 a.m.** Defense counsel and Lead Counsel for Plaintiffs are required to attend, however, all counsel are invited to attend if they so desire. The primary purpose of the Status Conference will be to address the joint trial model that will be employed in the next phase of the Depakote litigation. The parties also should be prepared to discuss the following questions:

1) What are the common issues of fact or law that unify the cases, bearing in mind that the initial trials employed in this phase of the ligation must each cover the maximum number of common issues and claims as possible. The parties should be prepared to provide specific examples of issues and claims that may be tried together. The Court will not entertain suggestions that common triable issues, unifying a large number of Plaintiffs, cannot be found. *See (*Docs. 280; 282) (where the parties suggest that the only way to proceed is through combining issues and joint trials); *see also In re Abbott Labs., Inc.*, 698 F.3d 568, 573 (7th Cir. 2012) ("[w]e agree with Abbott that it is difficult to see how a trial court could consolidate the cases as requested

Page **1** of **3**

by plaintiffs and not hold a joint trial or an exemplar trial with the legal issues applied to the remaining cases.")[1]

2) What issues or cases potentially can be resolved through motion practice?

3) Are there Plaintiffs who are non-responsive to counsel? *See* (Doc. 480-3.)

4) What event, *e.g.*, conception versus the last doctor visit before the conception, should be utilized to determine the relevant label in a Plaintiff's case? The Court has noticed inconsistency in some of the "relevant label" sections within the Status Reports. *Compare* (Doc. 569) *with* (Doc. 564).

5) Of the "universe" of possible labels, which changes are immaterial to the adequacy of the warnings? For the 1997-2006 label era, what is the largest window of time between substantive changes?

6) From a discovery standpoint, which cases are "ready for trial?" Of the remaining cases, which will require the least amount of time and resources to render the case ready for trial? Of those cases, how quickly can each be made triable? Which cases pose the largest resource and time burdens to render the cases ready for trial? Of those cases, how quickly can each be made triable? The parties should generate a list of the 100 easiest and the 100 most difficult cases to prepare for trial. The parties shall file the list with the Court on or before **November 7, 2016, at 5 p.m.** While the Court recognizes the inherent uncertainty in such a task, the parties should nevertheless complete a comprehensive analysis of the time and resources needed to bring each case to trial. As the bellwether approach has proven ineffective, the parties may not factor in their respective "likelihood of success on the merits" into the analysis.

7) Do the differences in drug formulas ingested by a Plaintiff, *e.g.* Depakote Sprinkles, Depakote ER, Depakote, Depakene, and Depacon, impact the question of liability or damages?

8) What are the common issues of fact or law which unite the non-fetal injury claims with the average Depakote litigation case? *See* (Doc. 476, at p. 1 n.1). Why should they not be severed from the consolidated mass action?

---

[1] The parties are directed to review *In re Bendectin Litig.*, 857 F.2d 290 (6th Cir. 1988). The Court is ***strongly*** inclined to employ a similar liability bifurcation process, where appropriate. Utilizing a special jury verdict form, the Court intends to ask carefully tailored yes/no questions that may then be employed for collateral estoppel and *mutual* issue preclusion purposes.


9) Do Defendants dispute manufacturing the "generic" Depakote Plaintiffs allegedly took in the six cases referenced by Defendants? (Doc. 476, at p. 5). If so, what evidence links the generic manufacturing to Defendants? What liability, if any, do Defendants face if they are not the manufacturer of the specific generics ingested by Plaintiffs?

Finally, if counsel believes there are additional matters that should be addressed at the status conference, they shall alert the Court in writing (via the proposed documents folder at NJRpd@ilsd.uscourts.gov — with a copy to opposing counsel) no later than **5 p.m.** on **November 7, 2016.**

**IT IS SO ORDERED.**

DATED:   October 12, 2016

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**