IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE DEPAKOTE: | ) |
| | ) |
| RHEALYN ALEXANDER, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 12-CV-52-NJR-SCW |
| | ) |
| ABBOTT LABORATORIES, INC., and | ) LEAD CONSOLIDATED CASE |
| ABBVIE, INC., | ) |
| | ) |
| Defendants. | ) |

# ORDER

**ROSENSTENGEL, District Judge:**

Before the Court is Plaintiffs' Motion to Stay Rounds III and IV Expedited Prescriber Depositions ("EPDs.") Discovery in the Depakote mass action has proceeded in a modular fashion with global defense discovery occurring first while individual Plaintiff discovery was stayed.[1] The Court authorized full discovery on a case by case basis throughout the bellwether phase of the litigation. After recognizing that the bellwether approach had failed and that continuing under such a method would be counterproductive, the Court authorized target discovery of the prescribing physicians in a select number of cases. (*See* Doc. 485).

The parties conducted the discovery and provided the requested status reports throughout the fall and winter of 2016. Recognizing the benefits and utility of the limited targeted discovery, the Court selected the second set of cases for prescriber depositions, including 24 biological mother depositions. (Doc. 653). Finally, on December 1, 2016, the

---

[1] As addressed in two separate Orders to Show Cause, Plaintiffs were required to submit basic information in connection with settlement efforts. (*See e.g.* Doc. 639).

Court issued an Order authorizing targeted discovery for the remaining post-January 1, 2008 label cases and pre-1996 label cases. (Doc. 703).

On February 24, 2017, Plaintiffs filed the instant motion requesting a stay of the prescriber depositions of the remaining post-January 1, 2008 label cases and pre-1996 label cases. In the motion, Plaintiffs assert that there is limited remaining utility in completing the prescriber depositions as the "Court currently [has] sufficient information to select groups of cases for trial, and certainly more than enough information to facilitate resolution." (Doc. 825, p. 2). Plaintiffs also point out that "a highly substantial amount of time, money and effort [has] been expended by Plaintiffs in arranging, preparing for and taking these depositions all across the country." *Id.* Conversely, Defendants argue that the limited discovery has a track record of advancing the litigation and thinning the docket. (Doc. 843). Additionally, Defendants provide a detailed analysis rejecting Plaintiffs' calculation on the number of depositions subject to the December 1, 2016 Order. *Id.* at p. 5 ("Thus, of the 112 claims originally included in EPD Groups III and IV, only 89 claims—not "200+"—were ever potentially "in play" as part of the efforts directed by the Court's December 1, 2016 Order (Doc. 703).")

In setting the additional prescriber depositions for the remaining post-January 1, 2008 label cases and pre-1996 label cases, the Court set forth the following considerations:

> To date the Court has ordered approximately 250 depositions in this mass action. While additional depositions may appear taxing and burdensome on the parties, three points must be kept in mind. First, there are over 600 individual claims in this mass action. Each side clearly has a deep bench of personnel and wide pool of resources to draw from. Second, the parties both claim that there are no common issues of fact or law that unite any meaningful percentage of the docket. If true, the Court is faced with over 600 individual cases and could simply set a pre-trial track for each case and authorize full discovery across the board. It is unlikely that anyone would favor such a drastic measure. Third, since implementing the prescriber depositions in July

> 2016, almost 12% of the total number of plaintiffs have been dismissed or withdrawn from the mass action. The Court is actively working on ways to bring as many cases to trial in 2017 as possible. In the interim, the practical reality of the mass action and the proven results in thinning the docket dictate that additional targeted discovery must continue.

(Doc. 703, p. 4).

Aside from a small passage of time (just under four months), nothing has changed from the considerations set forth in the December 1, 2016 Order. The depositions and associated status reports continue to be instrumental in the Court's management of this mass action. Indeed, stacks of the status reports permeate Chambers and were instrumental in the Court's selection of the 25 cases cleared for full discovery.

The Court recognizes the burdens these Orders place on the manpower and financial resources of the parties; however, arguments that enough depositions have been conducted to "facilitate resolution" carry little weight. In re: Depakote is not a class action; rather, it is a composite of 600 individual claims. The failure of the bellwether approach necessarily dictates that this Court must proceed as if all 600 cases will be tried to verdict. While the Court will continue to do everything in its power to bring the parties closer to a resolution, hoping for settlement is not a valid case management strategy.

For these reasons, Plaintiff's motion (Doc. 825) is **DENIED**.

**IT IS SO ORDERED.**

**DATED: March 24, 2016**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**